STEPHANIE RITZER RANDO, HAROLD S. RITZER, SHARON S. RITZER, S. GREGORY THOMAS, BOB L. THOMAS, VIRGINIA R. THOMAS, DORO-THY KATHERINE WILLIAMS, Individually; MICH-ELE ELIZABETH WILLIAMS, a Minor Through Her Guardian Ad Litem DOROTHY KATHERINE WIL-LIAMS, RICHARD WILLIAMS, and REBECCA OFENLOCH, Appellants, *v.* CALIFORNIA STATE AUTOMOBILE ASSOCIATION, Respondent.

No. 14150

June 26, 1984                    684 P.2d 501

*Dennis M. Sabbath; Gang & Berkley,* and *Thomas L. Leeds; Lehman & Nelson,* Las Vegas, for Appellants.

*Vargas & Bartlett,* and *Thomas F. Kummer; Pomeranz, Crockett & Myers,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This appeal arises from a summary judgment on a complaint for declaratory relief brought by respondent California State Automobile Association (CSAA), which held that the stacking of non-owned automobile insurance coverage for bodily injury liability should not be allowed in this case. For the reasons set forth hereafter, we affirm.

The undisputed facts giving rise to respondent CSAA's complaint for declaratory relief revolve around an automobile accident on June 3, 1977. On that date, Stephanie Ritzer Rando (Ritzer-Rando), a minor, was operating a borrowed vehicle which was owned by S. Gregory Thomas (Thomas). Ritzer-Rando was involved in a rear-end collision which injured the driver of a truck, Max Williams, who later died. A wrongful death action was instituted against both Ritzer-Rando and her mother, Sharon Ritzer (Ritzer), by Dorothy and Michelle Williams, wife and daughter of the accident victim. A second wrongful death action was later filed by two of the victim's adult heirs, Richard Williams and Rebecca Ofenloch.

The vehicle driven by Ritzer-Rando was one of four vehicles insured by CSAA under a single policy issued to Thomas. CSAA also insured three cars owned by Ritzer under a single policy of insurance.

CSAA filed a complaint for declaratory relief and for supplemental relief in interpleader against all parties, and thereafter cross-motions for summary judgment were filed by all parties. After oral argument, the lower court denied all motions for summary judgment. A motion for rehearing was granted, after which a second hearing was held. The district court then granted Insurer's motion for summary judgment and denied

the other parties' cross-motions. In its findings, the lower court accepted Insurer's position that it was liable in the amount of $15,000 under the omnibus provisions of the Thomas policy, and was further liable only in the amount of $15,000 under the "non-owned automobile" provisions of the Ritzer policy. The court rejected the argument that the Ritzer policy allowed for "stacking" the liability limits because more than one automobile was covered under that insurance policy.

This appeal followed.

It is conceded by all parties that CSAA must afford $15,000 coverage under the "omnibus" provision of the Thomas policy. It is also conceded that both Ritzer-Rando and Ritzer are covered under the provisions of the Ritzer policy, Ritzer-Rando because she was a relative of the named insured, using a non-owned automobile, and Ritzer because she was the statutory driver's license sponsor of Ritzer-Rando. The essential issue for our consideration is whether the bodily injury liability coverage on each of the three Ritzer vehicles may be stacked, thereby increasing threefold the limits of coverage under the non-owned automobile provisions of the Ritzer policy.

This Court has allowed the "stacking" of insurance coverage for both uninsured motorist coverage and basic reparation benefits under the repealed no-fault statutes. *See* Allstate Insurance Company v. Maglish, 94 Nev. 699, 586 P.2d 313 (1978) (allowed "stacking" of uninsured motorist coverage where two vehicles were covered by a single policy of insurance); State Farm Mutual Automobile Insurance Company v. Christensen, 88 Nev. 160, 494 P.2d 552 (1972) (upheld "stacking" of uninsured motorist coverage under five separate policies issued by insurer for five different cars); United Services Automobile Association v. Dokter, 86 Nev. 917, 478 P.2d 583 (1970) (allowed "stacking" of uninsured motorist coverage under two separate policies issued on two different cars by the same insurance carrier). *See also* Carrillo v. State Farm Mutual Automobile Insurance Company, 96 Nev. 793, 618 P.2d 351 (1980) (allowed "stacking" of survivor's benefit on each of five separate no-fault insurance policies issued by same insurer); Cooke v. Safeco Insurance Company, 94 Nev. 745, 587 P.2d 1324 (1978) (allowed "stacking" of basic reparation benefits under one insurance policy which insured two vehicles); Travelers Insurance Company v. Lopez, 93 Nev. 463, 567 P.2d 471 (1977) (stacking of basic reparation benefits under Nevada No-Fault Act approved where two separate no-fault policies from two different companies covered the same vehicle).

We have not previously dealt with a case in which "stacking" has been requested under a policy covering liability for

bodily injury stemming from the ownership, use or maintenance of an owned automobile, or, as is the case here, a non-owned automobile. However, our review of Nevada statutes, apposite case law, the CSAA policy of insurance and the circumstances of this case convinces us that stacking of the non-owned automobile coverage for bodily injury liability is inappropriate.

Under our statutes, every policy of motor vehicle liability insurance must include coverage of the named insured against loss from legal liability for damages arising from the ownership, maintenance or use of an owned vehicle covered in the policy and from the use by an insured of a non-owned vehicle. NRS 485.3091.[1] Our statutes, however, do not require an

---

[1]NRS 485.3091 states, in pertinent part:

1. A "motor vehicle liability policy" as the term is used in this chapter means an owner's or an operator's policy of liability insurance issued, except as otherwise provided in NRS 485.309, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

2. Such an owner's policy of liability insurance must:

(a) Designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

(b) Insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: $15,000 because of bodily injury to or death of one person in any one accident, and, subject to the limit for one person, $30,000 because of bodily injury to or death of two or more persons in any one accident, and $10,000 because of injury to or destruction of property of others in any one accident.

3. Such an operator's policy of liability insurance must insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.

4. Such a motor vehicle liability policy must state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability, and must contain an agreement or be endorsed that insurance is provided thereunder in accordance with the coverage defined in this chapter as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this chapter.

. . . .

7. Any policy which grants the coverage required for a motor

insured to maintain liability coverage in excess of the minimum amounts specified under Nevada law. Nor do they require any increase in minimum coverage as a result of multiple vehicle ownership by an insured. There consequently is no ascertainable public policy supporting appellants' contention that liability policies covering multiple vehicles must be construed to allow stacking of the vehicle coverages in order to increase limits of liability protection beyond the minimums provided by law. To the contrary, the legislature has limited its mandate on the subject to prescribed minimum amounts of coverage.

In addition to the public policy argument which we reject, appellants seek to validate their position by claiming parity with our decisions permitting stacking in the areas of uninsured motorist coverage and basic reparation benefits under erstwhile no-fault statutes. It is manifestly apparent, however, that no such parity exists. In contradistinction to the first-person coverage declared stackable under our cases cited above, we are here concerned with third-party bodily liability coverage available to an insured as a result of the ownership, use or maintenance of a vehicle. The first-person insurance focuses on the person of the insured and specified beneficiaries, whereas the third-party liability coverage derives from the ownership or use by an insured of a vehicle. Emick v. Dairyland Insurance Company, 519 F.2d 1317 (4th Cir. 1975). The latter coverage extends to both owned and non-owned vehicles as provided in the CSAA policy of liability insurance and by Nevada law. NRS 485.3091. The basic reparation benefits declared stackable under Travelers Insurance Co. v. Lopez and Cooke v. Safeco Insurance Co., *supra,* provided protection to the person of the insured and specified relatives whenever injured by vehicular impact. This type of coverage was afforded irrespective of fault and applied without regard to the ownership or operation of the vehicle involved in the injury. Similarly, the uninsured

vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy, and the excess or additional coverage is not subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" applies only to that part of the coverage which is required by this section.

8. Any motor vehicle liability policy may provide for the prorating of the insurance thereunder with other valid and collectible insurance.

9. The requirements for a motor vehicle liability policy may be fulfilled by the policies of one or more insurance carriers, which policies together meet those requirements. . . .

motorist coverage protects the insured and designated beneficiaries from injuries caused by an uninsured third party. In each instance, the coverage is of the first-person variety which approximates personal accident policies in kind. Allstate Insurance Company v. Mole, 414 F.2d 204, 206-07 (5th Cir. 1969); Government Employees Insurance Company v. Sweet, 186 So.2d 95, 97 (Fla.App. 1966); Hendrickson v. Cumpton, 654 S.W.2d 332, 334 (Mo.App. 1983); 8C J. Appleman, *Insurance Law and Practice* (Berdal ed.), § 5080 (1981).

Our decisions relating to uninsured motorist and basic reparations coverage emphasized the fact that separate premiums were paid for this type of first-person protection in connection with each insured vehicle. A reasonable expectancy of an insured in paying such premiums is an increase in personal coverage akin to that occurring when multiple life or medical policies are acquired. In each instance the person is the subject of the coverage and it is not relevant that the protection afforded in the form of uninsured motorist coverage or basic reparation benefits is attached to a policy of motor vehicle liability insurance. As observed by the court in Emick v. Dairyland Insurance Company:

> Although at times an unstated premise, it is precisely the floating, personal accident insurance character of medical payments and uninsured motorists coverage which has led courts to ignore the fact that these coverages have been engrafted onto liability policies insuring particular cars, and to hold that where double premiums have been paid, whether under a single policy covering more than one automobile, or whether under separate and independent policies, double coverage has been purchased, and stacking will be allowed, . . .

519 F.2d at 1325-26 (footnote omitted).

The same policy considerations which have prompted judicial approbation of stacking in the areas noted above do not apply to third-party liability insurance. The latter coverage is written to protect an insured's assets from third-party claims resulting from an insured's operation or maintenance of an owned or non-owned vehicle. This type of coverage essentially focuses on a particular vehicle without which the protection would not exist. Typical underwriting practices would lead a reasonable person to understand that if he or she owned two or more vehicles, and only one of the vehicles was covered by a motor vehicle liability policy, the protection afforded under that policy would not extend to the vehicles which were uninsured. Furthermore, if our hypothetical insured owned two

vehicles, each of which was covered by a liability policy under-written by a different insurance company, he or she could hardly expect that the protection of both policies would apply in combination when the insured was driving one of the vehicles. With these concepts in mind it is apparent that appellants have no rational basis for their position. The practical effect of appellants' contention may be illustrated as follows. A person who owns three vehicles and insures each under a single policy or multiple policies for the sum of $100,000/$300,000 would in reality enjoy liability coverage on each vehicle in the sum of $300,000/$900,000. Nowhere is it suggested that the insured actually pays a premium based upon the higher coverage. Yet, the smaller coverage is transmuted to the larger solely because of the multiple number of vehicles insured. The result of such a convoluted process would be apparent. Insurers would be forced to increase premium costs commensurate with the higher coverage established by judicial fiat.

There appears to us to be no logical basis for differentiating between owned and non-owned vehicles in analyzing the availability of stacking under a single multiple-vehicle liability policy. In either instance, the insured pays an agreed premium for a desired amount of liability protection. The premium paid will entitle an insured to the specified amount of protection attached to each owned vehicle identified in the policy. Additionally, the specified coverage extends to the use by an insured of a non-owned vehicle, thereby assuring the insured of constant liability coverage while operating any vehicle (excluding an owned vehicle which is uninsured or a non-owned vehicle used without the owner's permission).

Appellants seem to contend, however, that absent proof to the contrary, it must be assumed that Ritzer paid an unspecified sum for the extension of liability coverage to the use of a non-owned vehicle in connection with each premium on the three owned vehicles. Appellants conclude, therefore, that since three such "premiums" were paid by Ritzer, stacking should be allowed consonant with our decisions respecting uninsured motorists and basic reparation coverages. We do not agree.

First, it was appellants' burden to prove that CSAA charged a separate premium to extend liability coverage to the use of non-owned vehicles. American Liberty Insurance Company v. Ranzau, 473 S.W.2d 249, 254 (Tex.Civ.App. 1971), *aff'd,* 481 S.W.2d 793 (Tex. 1972). Appellants did not meet that burden. Secondly, even if we were to speculate dehors the record and

assume that the insurer factored in an allowance for the extension of coverage to a non-owned vehicle, it is apparent that all but an insubstantial amount of the liability premium would be allocable to the owned, insured vehicle. Allstate Insurance Company v. Zellars, 462 S.W.2d 550, 555-56 (Tex. 1970); 12 *Couch on Insurance* § 45:249 (2d rev. ed. 1981). Moreover, assuming it could be shown in the record that an element of cost was attached to the extension of coverage to an insured while driving a non-owned vehicle, we are not offended by the prospect of such a cost factor. In transferring liability protection to a non-owned vehicle, the insurer is without advance knowledge of the type or condition of any such vehicle and the risk to the insurer may thereby be perceptibly increased. Finally, since the liability coverage available to an insured while using a non-owned vehicle derives from that accorded an insured, owned vehicle, it defies reason to conclude that non-owned vehicle usage expands an insured's liability coverage beyond that enjoyed while using an owned vehicle. In any event, we have ascertained no basis in law, reason, public policy or the CSAA contract of liability insurance in support of the proposition that appellants are entitled to indemnity in an amount three times greater than that afforded under the policy in connection with each of the insured vehicles.

Appellants also refer us to the separability clause of the policy as a basis for the result they seek. It is clear, however, that this provision of the insurance contract accomplishes nothing more than avoiding the necessity of issuing a separate policy for each of the insured vehicles. As stated by the court in Pacific Indemnity Company v. Thompson, 355 P.2d 12, 12 (Wash. 1960) concerning the separability clause:

> [T]hat provision merely assures the applicability of the policy to whichever car is involved in an accident, or to all the cars, and does no more.

The separability clause was not intended to facilitate the stacking of coverages. Dixon v. Empire Mutual Insurance Company, 456 A.2d 335, 339 (Conn. 1983); annot., 37 A.L.R.3d 1263 (1971 and Supp. 1976).

Our analysis of appellants' position causes us to add our imprimatur to the uniform conclusion reached by courts in other jurisdictions disallowing stacking. We accordingly hold that the stacking of coverages determined by this Court to be

applicable to uninsured motorist coverage and basic reparation benefits has no application to motor vehicle bodily injury liability insurance. Consequently, the judgment of the district court is affirmed.