JEFFREY C. NEUMANN, CHARLES F. NEUMANN AND HELEN J. NEUMANN, APPELLANTS, *v.* THE STANDARD FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, RESPONDENT.

No. 15544

April 26, 1985 699 P.2d 101

[Rehearing denied December 10, 1985]

*Durney & Brennan,* Reno, for Appellants.

*Hibbs, Roberts, Lemons & Grundy,* Reno, for Respondents.

*Galatz, Earl & Catalano* and *Daniel F. Polsenberg,* Las Vegas, for Amicus Curiae.

# OPINION

*Per Curiam:*

This is an appeal from a summary judgment in favor of Standard Fire Insurance of Hartford, Connecticut (Standard Fire), finding it had complied with NRS 687B.145(1), thereby preventing the stacking of uninsured motorist coverages. Our examination of the insurance policy in question and the record persuades us that the trial court erred in its determination.

Appellant's two automobiles are insured by Standard Fire under the same policy. Appellant Jeffrey C. Neumann was a resident and family member in the home of appellants Charles F. and Helen J. Neumann. During the policy period, Jeffrey was seriously injured in an automobile accident when the vehicle in which he was riding as a passenger was struck by an uninsured motorist.

Standard Fire has paid the sum of $40,000.00 under the subject policy. According to Standard Fire, that amount represents the maximum amount owed to appellants. Appellants, on the other hand, contend they are entitled to stack their uninsured motorist coverages since two vehicles are insured under the policy. The parties agree that the additional $40,000.00 is warranted if this appeal is decided against Standard Fire.

Prior to the passage of NRS 687B.145(1),[1] this Court repeatedly held that "anti-stacking" provisions contained within automobile policies were void. *See* Allstate Ins. Co. v. Maglish, 94 Nev. 699, 586 P.2d 313 (1978). With the passage of the above-mentioned statute, however, the Nevada Legislature provided a means whereby an insurance company could prevent the stacking of uninsured motorist coverages. Nevertheless, certain criteria had to be satisfied by an insurer in order to avoid the stacking of coverages.

---

[1]NRS 687B.145(1) provides as follows:

687B.145 Provisions in policies of casualty insurance: Proration of recovery or benefits between policies; uninsured motorist coverage.

1. Any policy of insurance or endorsement providing coverage under the provisions of NRS 690B.020 or other policy of casualty insurance may provide that if the insured has coverage available to him under more than one policy or provision of coverage, any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the applicable coverages in the proportion that their respective limits bear to the aggregate of their limits. Any provision which limits benefits pursuant to this section must be in clear language and be prominently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.

Under NRS 687B.145(1) there are three prerequisites to the validity of an anti-stacking provision. First, the limiting provision must be expressed in clear language. Second, the provision must be prominently displayed in the policy, binder or endorsement. Finally, the insured must not have purchased separate coverage on the same risk nor paid a premium calculated for full reimbursement under that coverage. Thus, non-compliance with either of the first two prerequisites or payment of a double premium, notwithstanding compliance with the first two prerequisites, will render the limiting provision void.

In an effort to include the anti-stacking provisions of NRS 687B.145 within the original policy, Standard Fire sent appellants an amendment to the policy. The Amendment reads, in pertinent part, as follows:

PART C—UNINSURED MOTORISTS COVERAGE
* * *

LIMIT OF
LIABILITY
* * *

C. The applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:
1. Covered persons;
2. Claims made;
3. Vehicles or premiums shown in the Declaration; or
4. Vehicles involved in the auto accident.

Standard Fire contends that the above-quoted endorsement clearly fixes the limit of liability regardless of the number of vehicles or premiums shown in the Declarations. We disagree.

While the amendatory language may appear clear on its face, this case involves the use of an amendment to an original policy as opposed to that of a single integrated document. Thus, in order to determine the actual clarity of the amendment and its language, a comparison of the original policy with the amendment is necessary. This Court has a well-established policy of construing ambiguities in insurance contracts against the drafter. Yosemite Ins. Co. v. State Farm, 98 Nev. 460, 653 P.2d 149 (1982). Moreover, the ambiguity must be viewed from the standpoint of a layman, rather than a lawyer. *See* 2 Couch on Insurance 2d, § 15.84 (1984).

The amendment prefaces the changes, relevant to this appeal, by labeling the area of concern as "PART C. UNINSURED MOTORISTS COVERAGE." The original policy, to which the amendment supposedly applies, has neither a Part C nor such a caption. The original policy has only a section titled "Protection

Against Uninsured Motorists." Continuing, while there is a "Limits of Liability" section in the original policy, there is no paragraph "C.," but only a paragraph "(c)." Also, the original policy does not contain paragraphs "A." and "B.," but only paragraphs "(a)" and "(b)." In fact, the only capital letters in the original policy appear on the Delarations page and are not references to paragraphs.[2]

The amendment resulted in confusion rather than clarification. The amendment mislabeled and mislettered those portions of the amendment intended to correspond with the original policy. While appellants, through an exercise of deduction and elimination, may have been able to divine the result intended by Standard Fire, such a task was certainly not required nor should be expected of them. Indeed, given the consistent misdirections of the amendment, an insured could reasonably conclude the amendment did not apply to his policy.

 ██

The original policy, coupled with the amendment, did not produce a clear provision preventing the stacking of uninsured motorist coverages. Any ambiguity must necessarily be construed against Standard Fire. To be "clear" the provision should be neither ambiguous nor difficult to understand. The procedure set forth in NRS 687B.145 was not followed.

 ██

NRS 687B.145(1) also requires that the anti-stacking provision be prominently displayed in the policy. The purpose of this requirement is to "make more apparent to a policy holder those provisions which may have an adverse effect on a claim under the policy, and to give him notice of his true coverage." 36 A.L.R.3d 464, 469. It is generally held that when a policy provision violates a statute requiring exceptions to be printed with prominence, the provision will be rendered meaningless and the contract will be read as if the exception were not there. 36 A.L.R.3d 464, 474.

It is Standard Fire's position that the bold print, large type, and double spacing of their amendment prominently displayed the anti-stacking language. Under the facts of this case, we hold to the contrary.

In LaDuke v. State Farm Mutual Automobile Ins. Co., Civil LV-82-464-RDF (D. Nev. Aug. 23, 1983), Judge Foley held:

---

[2]Standard Fire has rewritten its insurance policy and the amendment in question clearly applies to the divisions and subdivisions of that policy. In fact, such amendatory language was included in the new policy verbatim. It is evident, however, that the amendment did not correspond with the original policy.

NRS 687B.145(1) clearly requires that the "anti-stacking" provisions must be printed in a manner such that the provision is more readily visible to the policy holder than the main body of the endorsement. The manner in which this is accomplished (e.g., boldface print, larger print, underscoring, etc.) is left to the [insurer].

Standard Fire contends that such a test is erroneous because it requires an "anti-stacking" provision to be set out more conspicuously than other provisions which might also have an adverse effect on a claim under a policy. Thus, it concludes a court may rule that such other provisions have not been made more apparent to the policy holder and should not, therefore, be given effect.

[Headnote 7]

Such a test is workable, however, and Standard Fire's contention is without merit. Anti-stacking language is required by the statute to have greater prominence than other provisions. The basic requirements for an insurance policy are already set forth in NRS 687B.124, which mandates a certain size print and fundamental readability. An anti-stacking clause must have greater prominence than the balance of the policy language; otherwise, the terms of NRS 687B.145(1) would be superfluous. In other words, a clause attains prominence by being different from its surrounding terms.

In the instant case, while the subject portion of the amendment was in large, bold-faced print and double-spaced, bold-faced headings appeared throughout the policy and the entire amendment has the same type and spacing. Conformance with the rest of the policy does not give it prominence. In fact, the section of the amendment which addresses uninsured motorist coverage emphasizes, through the use of a darker, bolder type, "Covered persons," thereby drawing attention *away* from the critical language of "vehicles or premiums shown in the Declaration." To be prominently displayed attention must be directed *toward* the critical language.

The argument that no clause should be made more prominent than another nullifies or disregards the legislative requirement and must therefore be rejected. The anti-stacking language in this case was no more prominent than the remainder of the amendment. Moreover, Standard Fire effectively directed appellants' attention away from the restricting language. As a result, Standard Fire has not complied with the requirements of NRS 687B.145 and its attempt to prevent stacking must fail.

We have considered the arguments asserted both in the briefs and before this Court concerning whether the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage. While there is some evidence before us which indicates a double premium was in fact paid, there are, nevertheless, essential facts lacking which are necessary to reach a proper determination of this issue. We therefore express no opinion on the issue of the double premium payment at this time.

Notwithstanding our inability to resolve the double premium issue, we do conclude the policy amendment was neither clear nor prominently displayed. Standard Fire did not comply with NRS 687B.145(1) and therefore stacking was permitted.

Accordingly, we reverse the lower court's decision.