**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Joel T. CLEMMONS and Rhonda Clemmons, Defendants.**

**No. CV–S–89–270–HDM (LRL).**

United States District Court, D. Nevada.

July 13, 1990.

Scott A. Glogovac and Gerald D. Waite, Vargas & Bartlett, Reno, Nev., for plaintiff.

David Stoebling, Las Vegas, Nev., for defendants.

## ORDER

McKIBBEN, District Judge.

Plaintiff, Allstate Insurance Company (Allstate), has filed a motion for summary judgment (# 17). This court ordered the parties to supplement the record with excerpts from depositions and/or responses to interrogatories (# 39), and both parties have filed supplemental points and authorities and replies. After reviewing the motions filed and the accompanying documents and affidavits, this court has determined that Allstate is entitled to summary judgment.

This is a diversity action seeking declaratory relief, and this court has jurisdiction under 28 U.S.C. section 1332. Defendants held an Allstate automobile insurance policy which insured two of their automobiles. Relevant here is the portion of the policy that entitled the insureds to recover for bodily injury caused by the owner or operator of an underinsured motor vehicle (underinsured motorist coverage). The limits of the underinsured motorist coverage under the Defendants' Allstate policy was $15,000 when only one insured person sustained bodily injury as the result of the wrongdoing of an underinsured motorist, and $30,000 when two or more insureds were so injured.

On March 6, 1988, Defendant Joel T. Clemmons sustained bodily injuries in an automobile accident caused by an underinsured motorist. After Clemmons made a claim, Allstate tendered the $15,000 limit of the underinsured motorist coverage under the policy. Clemmons asserts that he is entitled to "stack" the limits of the underinsured motorist coverage to recover up to the sum total of the full policy limit for each vehicle insured by Allstate and recover $30,000 for his injuries. Allstate disputes this contention.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Pro. 56. The mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When determining whether a genuine issue of material fact exists for summary judgment all facts and inferences drawn must be viewed in the light most favorable to the non-moving party. *Poller v. CBS, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

The question of whether the policy complies with Nevada law is an issue of law and is therefore properly determined on a motion for summary judgment. *See Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co., Inc.*, 512 F.2d 1017, 1024 (5th Cir.1975). Nev.Rev.Stat. section 687B.145(1) provides as follows:

Any policy of insurance or endorsement providing coverage under the provisions of NRS 690B.020 [uninsured/underinsured vehicles] or other policy of casualty insurance may provide that if the insured has coverage available to him under more than one policy or provision of coverage, any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the

applicable coverages in the proportion that their respective limits bear to the aggregate of their limits. Any provision which limits benefits pursuant to this section must be in clear language and be prominently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.

Clemmons contends that Allstate's policy did not comply with the statute's prerequisites for precluding stacking. Specifically, he argues that the language in the Allstate policy was not clear or prominently displayed and that he purchased separate coverage on the same risk and paid a premium calculated for full reimbursement.

■ In a diversity case, a district court must follow the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *American Triticale, Inc. v. NYTCO Serv., Inc.*, 664 F.2d 1136, 1141 (9th Cir.1982). Accordingly, we look to Nevada law in this matter. However, the specific issue presented here, whether this policy complies with Nev.Rev.Stat. section 687B.145 and thereby allows Allstate to preclude stacking of benefits, has not yet been addressed by the Nevada Supreme Court. Therefore, this court must determine the result that court would reach if it were deciding the case. *See Molsbergen v. United States*, 757 F.2d 1016, 1020 (9th Cir.1985), *cert. dismissed*, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985).

■ The Nevada Supreme Court has outlined principles governing the interpretation of insurance policies in general and has addressed the requirements of Nev. Rev.Stat. section 687B.145 in evaluating other policies. Generally, a court must look to the entire insurance contract for a true understanding of the respective risks assumed by the insurer and the insured. *National Union Fire Ins. Co. v. Reno's Exec. Air, Inc.*, 100 Nev. 360, 364, 682 P.2d 1380, 1382 (1984) (citing *Scott v. Keever*, 212 Kan. 719, 512 P.2d 346 (1973)).

*Clear Language, Prominently Displayed*

■ In specifically construing the requirements of section 687B.145, the Nevada Supreme Court found an anti-stacking provision unenforceable for failure to comply with the statutory requirements. *Neumann v. Standard Fire Ins. Co.*, 101 Nev. 206, 699 P.2d 101 (1985) (per curiam). Although the facts in that case are distinguishable—the original policy contained no anti-stacking provision and the defendant's attempt to incorporate such a provision by issuing an amendment to be incorporated was mislabelled and mislettered, the Court did outline factors with which to evaluate whether a policy meets the requirements of the statute. To be clear, the provision should be neither ambiguous nor difficult to understand. *Id.* at 210, 699 P.2d at 104. Ambiguity should be determined from the standpoint of a layman. *Id.* at 209, 699 P.2d at 104. To meet the "prominently displayed" requirement, the anti-stacking clause "must have greater prominence than the balance of the policy language.... In other words, a clause attains prominence by being different from its surrounding terms." *Id.* at 211, 699 P.2d at 105. The Court also adopted Judge Foley's decision in *LaDuke v. State Farm*, No. LV–82–464–RDF, slip op. (D.Nev. Aug. 23, 1983), that the typeface or other manner that the insurer uses to accomplish this increased visibility should be left to the insurer. *Neumann*, 101 Nev. at 211, 699 P.2d at 104–05.

With these standards in mind, Clemmons's contentions that the provision is not clear or prominently displayed are not tenable. A general anti-stacking provision appears on the first page of the policy, under the heading "COMBINING LIMITS OF TWO OR MORE AUTOS PROHIBITED" in blue print. Underneath this heading in brown print, the text states:

IF YOU HAVE TWO OR MORE AUTOS INSURED IN YOUR NAME AND THERE IS AN ACCIDENT AND ONE OF YOUR INSURED AUTOS IS INVOLVED IN THE ACCIDENT, ONLY THE COVERAGE LIMITS SHOWN ON THE DECLARATIONS PAGE FOR

THAT AUTO WILL APPLY.... THE LIMITS AVAILABLE FOR ANY OTHER AUTO COVERED BY THE POLICY WILL NOT BE ADDED TO THE COVERAGE FOR THE INVOLVED ... AUTO.

Allstate Ins. Co., *Allstate Automobile Policy, Nevada* 3–4, Plaintiff's motion for summary judgment (# 17), Exh. AA (emphasis omitted). Then, in the uninsured auto section of the policy, which includes underinsured motorists in its definition section on page 16, there appears a separate anti-stacking provision. This provision also appears under a blue heading entitled, "LIMITS OF LIABILITY" and provides: THESE LIMITS ARE THE MAXIMUM ALLSTATE WILL PAY FOR ANY ONE MOTOR VEHICLE ACCIDENT REGARDLESS OF THE NUMBER OF: 1. CLAIMS MADE;

2. VEHICLES OR PERSONS SHOWN ON THE DECLARATIONS PAGE; OR

3. VEHICLES INVOLVED IN THE ACCIDENT.

*Id.* at 17 (emphasis omitted). There are similar anti-stacking provisions throughout the policy for the other types of coverage. *See, e.g., id.* at 7 (bodily injury), 11 (medical payments). Other clauses on these pages are also set off with blue headings; however, only the anti-stacking headings use "all-caps" typeface. Furthermore, most of the brown text in the other provisions is in regular type, not "all caps." While the underinsured motorist coverage's anti-stacking provision is in the same typeface as some other provisions in the same column, this reflects the consistent use of larger type for all limiting provisions (including the anti-stacking provisions) than that used for the substantive terms of the policy. This draws the insured's attention to the limiting provisions and is consistent with the thrust of *Neumann. Neumann,* 101 Nev. at 210, 699 P.2d at 104. Viewing the policy as a whole as the court is bound to do under *National Union,* the anti-stacking provisions are clear and prominently displayed.

*Purchased Full Coverage*

According to the declarations sheet, Clemmons paid $26.30 for underinsured motorist coverage on a 1978 Jeep and $21.00 on a 1973 Charger. Declarations Page, attached to Plaintiff's motion for a protective order (# 13). Contending that these amounts are comparable, Clemmons argues that even if the policy complies with Nevada law, the anti-stacking provision cannot be enforced against him because he and his wife "purchased separate coverage on the same risk and ... paid a premium calculated for full reimbursement under that coverage." Nev.Rev.Stat. § 687B.145(1). Clemmons claims that the lower amount charged for the Charger merely reflects the administrative savings Allstate realizes from having two vehicles processed on the same policy. In the alternative, Clemmons contends that since underinsured motorist coverage pays for claims arising even when the insureds are not driving in an insured vehicle, the $21 premium for the Charger actually purchased no additional coverage from that already provided by the Jeep.

These contentions lack merit. Clemmons paid 20% less for underinsured motorist coverage on his second vehicle than for his primary vehicle. According to the affidavits filed by Allstate with its motion for summary judgment and in response to the court's order to supplement, Allstate discounts the premiums charged for second vehicles because of the reduced exposure that the second vehicle presents (statistically, a second vehicle is not in use exactly twice as much as a first vehicle). The insureds do not pay "a premium calculated for full reimbursement under that coverage." According to the affidavits, "rating factors," such as the driver's age or marital status and the make/model or year of the vehicle, are not employed in setting Allstate's rates for underinsured motorist coverage. Instead, only the insured's desired coverage limits, territory, and the number of vehicles on the policy are used. Supplemental affidavit of Dean Lamb at 2–3, attached to Plaintiff's supplemental memorandum (# 44). Thus, "a premium

calculated for full reimbursement" for the Charger would have been $26.30.

Furthermore, although Allstate realizes some administrative savings by processing two vehicles on the same policy, these savings are a collateral result of the lower risk presented by the second vehicle—fewer claims will be made on that vehicle. In addition, contrary to Clemmons's contentions, the premium charged for the second vehicle does pay for additional coverage since the two vehicles could be in simultaneous use and simultaneous claims could be made on both vehicles.[1]

The parties also disagree over which party has the burden of proof on this issue under *Rando v. California State Auto. Ass'n*, 100 Nev. 310, 684 P.2d 501 (1984). This court need not decide this issue since Allstate has affirmatively established that Clemmons did not pay a full premium that would allow benefits to be stacked.

Defendants' attempt, in their supplemental points and authorities in opposition to Plaintiff's motion for summary judgment (# 45), to raise the issue of whether Allstate was required under Nevada law to give them the option to pay a premium calculated for full reimbursement on their second vehicle is not timely and will not be considered by the court.

It is, therefore, hereby ORDERED that:

1.  Plaintiff's motion for summary judgment (# 17) is GRANTED.

2.  Defendants' motion to extend discovery period and for sanctions (# 36) is DENIED.

3.  Defendants' motion to consolidate (# 40) is DENIED.

It is so ORDERED.

---

**1.** Clemmons's reliance on *Allstate Ins. Co. v. Maglish*, 94 Nev. 699, 586 P.2d 313 (1978), is misplaced. Not only did that case deal with uninsured, instead of underinsured, motorist coverage, but it was superseded by the enactment of Nev.Rev.Stat. § 687B.145, which permitted insurers to prohibit stacking. *Neumann*, 101 Nev. at 208, 699 P.2d at 103.