977 F.2d 587
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
Joel T. CLEMMONS and Rhonda Clemmons, Defendants-Appellants.
 No. 91-15966.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 23, 1992.
Decided Oct. 13, 1992.
 
 Before CANBY, REINHARDT and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Joel and Rhonda Clemmons appeal the district court's grant of summary judgment in favor of Allstate Insurance Company ("Allstate") in its action for declaratory relief. Allstate issued the Clemmonses an automobile insurance policy that insured two of their automobiles. At issue was the underinsured motorist ("UIM") coverage provided for by the policy. The limits of the UIM coverage under the policy were $15,000 per person and $30,000 per accident where two or more persons are injured.
 
 
 3
 Joel Clemmons sustained covered injuries in an automobile accident caused by an underinsured motorist. After Clemmons made a claim, Allstate tendered the $15,000 limit of the UIM coverage under the policy. Clemmons asserted, however, that he was entitled to "stack" the limits of the underinsured motorist coverage to recover up to the sum total of the full policy limit for each of the two vehicles insured by Allstate and, therefore, he was entitled to recover $30,000 for his injuries. Allstate disagreed and filed this action.
 
 
 4
 Stacking is available to assure that the insured receives the benefits for which he has paid. Nationwide Mutual Ins. Co. v. Moya, 1992 WL 193052, slip op. at 2 (Nev. August 10, 1992). Prior to 1979, all anti-stacking provisions were void under Nevada law. See Bove v. Prudential Ins. Co. of America, 799 P.2d 1108, 1110 (Nev.1990). In 1979, however, the Nevada legislature enacted Nev.Rev.Stat. § 687B.145, which authorizes anti-stacking provisions if certain requirements are met. See id. at § 687B.145(1).[1] An insurer is permitted to preclude "stacking" or combining of UIM coverage if the policy includes a clear and prominently displayed provision which advises the policy holder of the prohibition, and the premiums charged for UIM coverage on multiple vehicles do not constitute separate coverage on the same risk so that the insured does not pay a premium calculated for full reimbursement under that coverage. Nev.Rev.Stat. § 687B.145(1); Neumann v. Standard Fire Ins. Co., 699 P.2d 101, 103 (Nev.1985); accord Bove, 799 P.2d at 1110.
 
 
 5
 Normally, an insured has a reasonable expectation that he will receive additional UIM indemnification for each separate UIM premium paid. Torres v. Farmers Ins. Exchange, 793 P.2d 839, 842-43 (Nev.1990). Thus, when the insurer attempts to defeat this reasonable expectation, it must prove the validity of its anti-stacking provision in accordance with the requirements of section 687B.145(1). Id. at 843. "The burdens of persuasion and production on the issue of the validity of an anti-stacking clause prohibiting stacking of [UIM] coverage limits rest on the insurer." Id. at 842. Placing the burden of proof on the insurer is "especially appropriate" when determining whether the insured purchased separate coverage for the same risk. See Bove, 799 P.2d at 1111. Because the insurer has ready access to the documents necessary for determining whether double premiums have been paid, and the expertise needed to explain and justify any added premiums, it is reasonable that the insurer bears the duty of presenting such evidence to the court. Id. at 1111-12.
 
 
 6
 As the moving party, Allstate sought summary judgment on the ground that its anti-stacking provision met the requirements of section 687B.145(1) and, therefore, was valid and enforceable as a matter of law. For the reasons discussed, Allstate bore the burden of proof. A party moving for summary judgment must come forward with an initial showing that it is entitled to judgment. Fed.R.Civ.P. 56(a) and (e). If the moving party also bears the burden of persuasion on the issue at trial, its showing must "entitle it to a directed verdict if the evidence went uncontroverted at trial." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir.1992) (quotation omitted); cf. Celotex Corp. V. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial."); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The judge's inquiry, therefore, unavoidably asks ... whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (quotation omitted)).
 
 
 7
 Allstate presented evidence, via the testimony of its actuary, Dean Lamb, and its business records, tending to establish that Clemmons paid separate premiums for UIM coverage for each vehicle in accordance with the premium rate structure which the Nevada Department of Insurance had approved for use. Allegedly commensurate with that premium rate structure, Clemmons paid $26.30 for the UIM coverage on his 1978 Jeep and $21.00 on his 1973 Charger. According to Lamb, the $21.00 premium charged for the UIM coverage on the 1973 Charger represented a premium for risks associated with insuring the 1973 Charger, and in no amount represented a premium charge for risks associated with insuring the 1978 Jeep. Lamb testified that the decrease in the amount of the premium charged for the UIM coverage on the 1973 Charger compared to the 1978 Jeep was based upon the actuarial determination that while a second insured vehicle presents risks to exposure which are in addition to the risks to exposure presented by the first insured vehicle, those additional risks are different from and lower than the risks associated with the first insured vehicle because the two insured vehicles are not anticipated to be in actual use twice as much as a single insured vehicle.
 
 
 8
 Under Nevada law, an insurer is prohibited from issuing an automobile policy that does not protect its insured from owners or operators of uninsured motor vehicles, unless the insured expressly rejects such coverage.[2] See Nev.Rev.Stat. § 690B.020; Zobrist v. Farmers Ins. Exchange, 734 P.2d 699, 699 (Nev.1987); State Farm Mutual Automobile Ins. Co. v. Hinkel, 488 P.2d 1151, 1153 (Nev.1971) (decision under former similar statute). By statute, the amount of coverage provided cannot be less than the $15,000 per person or $30,000 per accident required for liability insurance. See Nev.Rev.Stat. §§ 690B.020(2) and 485.3091(1)(b); see also Zobrist, 734 P.2d at 700. The statutory coverage provided for accidents with uninsured vehicles is personal to the insured. See, e.g., United Services Automobile Ass'n v. Dokter, 478 P.2d 583, 584-85 (Nev.1970) (pedestrian who was named insured under automobile liability policies could recover under uninsured motorist provision of each policy); Hinkel, 488 P.2d at 1153. Thus, anyone who is a "person insured" within the meaning of the uninsured motorist statutes may not be excluded from coverage by provisions in the policy of insurance. Zobrist, 734 P.2d at 700. In accordance with these principles, the Nevada Supreme Court has determined that the benefits under an uninsured motorist provision in a liability policy issued to a named insured in one motor vehicle owned by him extends to the named insured while he is operating another motor vehicle owned by him which is not covered in such liability policy. Hinkel, 488 P.2d at 1154; accord Zobrist, 734 P.2d at 700.
 
 
 9
 In this case, Clemmons paid separate premiums for UIM coverage for each vehicle--$26.30 for the 1978 Jeep and $21.00 for the 1973 Charger. The limits of the UIM coverage under the policy were $15,000 per person and $30,000 per accident when two or more persons are injured, which is also the minimum amount required by statute. Thus, under Nevada law, Clemmons would receive that amount of coverage on his 1973 Charger by virtue of his UIM coverage on the 1978 Jeep, even without paying the second premium for $21.00. Clemmons is required to pay the second premium, however, in order to receive the second policy. Because Allstate's risk is greater when two cars are involved, it requires that the UIM provision be included in each policy and it charges a separate fee for that additional risk. Otherwise, it appears that Clemmons receives no additional coverage with respect to UIM insurance for payment of a second premium. Indeed, that fact coupled with the fact that prior to, as well as after, the inclusion of the anti-stacking language in Allstate's policies in 1985, the differential between the base premium for the first automobile and the premiums for additional automobiles remained virtually constant, would lead to the logical conclusion that the amount charged for the second premium was in contemplation of full reimbursement under the policy.
 
 
 10
 Lamb's declaration fails to adequately explain exactly what risk is covered by the additional $21.00 payment. Rather, his declaration is theoretical and without any definitive practical application. We simply cannot tell from this evidence what the additional premium was calculated to protect against. Lamb acknowledged that he did not have direct knowledge of the basis for the charges and simply guessed as to the reasons for them. Because Lamb's testimony does not answer whether Clemmons purchased separate coverage for the same risk and paid a premium that was calculated for full reimbursement under that coverage, and the burden was on Allstate to conclusively establish that this did not occur, summary judgment should not have been granted. The district court's decision to grant Allstate's motion for summary judgment is reversed.
 
 
 11
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 687B.145(1) provides in relevant part:
 Any policy of insurance ... providing [casualty coverage] may provide that if the insured has coverage available to him under more than one policy or provision of coverage, any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the applicable coverages in the proportion that their respective limits bear to the aggregate of their limits. Any provision which limits benefits pursuant to this section must be in clear language and be prominently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.
 Nev.Rev.Stat. § 687B.145(1).
 
 
 [2]
 Underinsured motorist coverage is a component of uninsured motorist coverage and does not exist separately. See Hall v. Farmers Ins. Exchange, 768 P.2d 884, 885 (Nev.1989)