NATIONWIDE MUTUAL INSURANCE COMPANY, AN INSURANCE COMPANY DOING BUSINESS IN NEVADA, APPELLANT, v. ALISHA COATNEY, AN INDIVIDUAL; GENICE COATNEY, PARENT AND GUARDIAN OF HOLLY COATNEY, A MINOR; GENICE COATNEY, AN INDIVIDUAL; AND MICHAEL COATNEY, AN INDIVIDUAL, RESPONDENTS.

No. 36208

March 15, 2002

42 P.3d 265

[Rehearing denied May 10, 2002]

[En banc reconsideration denied July 26, 2002]

*Hardy & Hardy* and *Nancy M. Somers,* Las Vegas, for Appellant.

*Patrick K. McKnight,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

In this appeal from a certified partial summary judgment, we are asked to decide whether, and under what circumstances, an insurer may validly limit uninsured-underinsured motorist coverage to a specific automobile. We conclude that uninsured-underinsured motorist limitations of this nature are valid, provided they comply with the three statutory prerequisites set forth in NRS 687B.145(1). Because the insurance policy at issue comports with these statutory requirements, the insurer's coverage limitation and anti-stacking provision are not void for public policy reasons. We therefore reverse and remand for trial on respondents' remaining claims.

### FACTS

On June 12, 1997, respondents Alisha and Holly Coatney were severely injured in an automobile accident with an underinsured motorist while Alisha was driving a 1989 Ford Tempo owned by her father, respondent Michael Coatney. Both Alisha and Holly were minors when the accident occurred. The medical costs related to their injuries exceeded the underinsured motorist's liability coverage.

Appellant Nationwide Mutual Insurance Company ("Nationwide") insured the Tempo, which carried uninsured-underinsured motorist ("UM") coverage of $50,000 per person or $100,000 per occurrence. At the time of the accident, Nationwide also insured a 1995 GMC Vandura owned by Michael Coatney under the same policy. The Vandura coverage included separate UM limits of $100,000 per person or $300,000 per occurrence. The Vandura was not involved in the accident that injured Alisha and Holly.

The policy explicitly limited UM coverage through an anti-stacking clause.[1] The paragraphs containing the anti-stacking and UM coverage provisions were enclosed in a box, setting them off from the remainder of the policy, and provided that

---

[1]Anti-stacking provisions prevent insureds from combining their coverage limits on separate policies or automobiles. *See generally Bove v. Prudential Insurance Co.,* 106 Nev. 682, 684, 799 P.2d 1108, 1109 (1990).

[i]f you or any other insured is in an accident:

(a) In your auto—we will not pay more than the limit of coverage for that particular auto.

(b) In a motor vehicle other than your auto or while a pedestrian – we will not pay for more than the limit of coverage which you have on any one of your autos.

This limit of coverage applies regardless of the number of policies, insureds, your autos, claims made, or motor vehicles involved in the accident. Coverages on other motor vehicles insured by us cannot be added to or stacked on the coverage of your auto that covers the loss.

Following the accident, Nationwide paid the Coatneys $100,000 under the policy's UM provision in subpart a) of the paragraph. Nationwide contends that, because Alisha and Holly were injured while in the Tempo, their recovery was limited to the UM coverage connected to "that particular auto," or $50,000 per person.

The Coatneys demanded additional payment of the $100,000 of UM coverage per person that they purchased in connection with the Vandura. Such stacking of UM coverage would total $150,000 per injured child. After Nationwide rejected this demand, the Coatneys filed an action in district court. Among other claims, the Coatneys sought a declaratory judgment that Nationwide must stack the coverages under the policy.

By stipulation, the parties conducted limited discovery. The Coatneys deposed Thomas Rau, a Nationwide actuary, who testified concerning Nationwide's method of calculating its Nevada UM coverage. Nationwide also produced actuarial tables and a summary of the model it used for UM premium pricing.

Neither party disputed any facts relating to the issue of whether Nationwide had an obligation to stack the UM coverages. Consequently, both Nationwide and the Coatneys submitted cross-motions for summary judgment on that issue. In their motion for partial summary judgment, the Coatneys conceded that Nationwide had a statutory right to limit UM coverage in the policy.[2] However, they argued that the policy's anti-stacking clause was void in this case.

---

[2]Nevada's anti-stacking statute, NRS 687B.145(1), provides:

Any policy of insurance or endorsement providing coverage under the provisions of NRS 690B.020 or other policy of casualty insurance may provide that if the insured has coverage available to him under more than one policy or provision of coverage, any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the applicable coverages in the proportion that their respective limits bear to the aggregate of their limits. Any provision which limits benefits pursuant to this section must be in clear language and be promi-

After a hearing on the cross motions for partial summary judgment, the district court ruled in favor of the Coatneys, specifically finding that the Coatneys could stack the UM coverage on each vehicle. The district court ruled that the anti-stacking clause was void because (1) it was ambiguous regarding whether the UM coverage was limited to the highest coverage on a single vehicle, and (2) it failed to specify that the UM limitation applied regardless of the number of UM premiums paid. The district court declined to reach the issue of whether the policy improperly required the Coatneys to purchase separate coverage for the same risk.

The district court certified its order granting partial summary judgment as final under NRCP 54(b).[3] Nationwide now appeals.

## DISCUSSION

A valid anti-stacking provision must satisfy three prerequisites under NRS 687B.145(1).[4] "First, the limiting provision must be expressed in clear language. Second, the provision must be prominently displayed in the policy, binder or endorsement. Finally, the insured must not have purchased separate coverage on the same risk nor paid a premium calculated for full reimbursement under that coverage."[5] Accordingly, a limiting provision is void if it fails to comply with any of these three requirements.[6]

The Coatneys contend, and the district court agreed, that an anti-stacking clause is void for public policy under NRS 687B.145(1) unless it expressly states that UM policy coverage may equal but not exceed the highest UM amount on a single vehicle.[7]

---

nently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.

[3]NRCP 54(b) provides, in part:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

[4]See Neumann v. Standard Fire Ins., 101 Nev. 206, 209, 699 P.2d 101, 103 (1985).

[5]Id.

[6]See id.

[7]Here, the Coatneys' highest UM coverage was the $100,000/$300,000 limit on the Vandura.

We have previously invalidated an anti-stacking clause under the clarity requirement of NRS 687B.145(1) that failed to specifically limit the total UM coverage to the highest coverage on any single vehicle.[8] However, unlike the Coatneys' policy, the policy in *Torres v. Farmers Insurance Exchange* did not attempt to limit UM recovery to the insured vehicle involved in the accident.[9]

We now make clear that restricting UM recovery to the highest amount on a single vehicle is not the only valid anti-stacking method at an insurer's disposal. Indeed, an insurer cannot possibly be expected to award an insured the higher policy limit on a single vehicle where it has already validly restricted UM recovery to the limit on the vehicle involved in the accident.[10] In short, an insurer may incorporate either anti-stacking method into its policies, and must be allowed to enforce a provision limiting UM recovery to the limits on a single insured vehicle.

Here, because the accident occurred in the Tempo, subpart a) of the Coatneys' policy applied to explicitly limit UM coverage to "that particular auto," or the $50,000/$100,000 UM amount on the Tempo.[11] This policy language is clear and was prominently displayed within a box along with the other UM policy provisions. Additionally, the policy's anti-stacking clause expressly prohibits stacking of UM coverage on other insured vehicles. This clause was also enclosed in the box surrounding the policy's text. The policy's language is unambiguous and comports with the requirements of NRS 687B.145(1); it is therefore not void for public policy.

The Coatneys also contend that Nationwide charged them a double premium for UM insurance covering the same risk on both autos, in violation of the third requirement of NRS 687B.145(1). The record, however, clearly shows that the Tempo and Vandura each carried different UM coverage amounts for different risks. Nationwide's actuary, Thomas Rau, opined that the Coatneys pur-

---

[8]*See Torres v. Farmers Insurance Exchange,* 106 Nev. 340, 793 P.2d 839 (1990). We note that we expressly approved of language nearly identical to that in the Coatneys' policy in *Bove v. Prudential Insurance Co.,* 106 Nev. 682, 686, 799 P.2d 1108, 1111 (1990).

[9]The insured was injured as a passenger on her uninsured friend's moped. *See Torres,* 106 Nev. at 342, 793 P.2d at 840.

[10]In circumstances where the insured is injured as a passenger in a third-party's vehicle or uninsured vehicle he or she owns, any anti-stacking clause limiting UM recovery to the limit on the insured vehicle involved in the accident would necessarily be inapplicable.

[11]This result would have been different had the accident not occurred in the Tempo. Under subpart b) of the policy, the Coatneys would have been entitled to the higher $100,000/$300,000 Vandura coverage limit if the accident had occurred in an automobile not owned by the Coatneys or while the injured insureds were pedestrians.

chased separate UM coverage for distinct risks on each vehicle. According to Mr. Rau, Nationwide accordingly calculated each auto's premium to reflect the different UM risks and corresponding coverage amounts on each vehicle.[12] The Coatneys have failed to produce any evidence to refute this conclusion.

The record reveals that the Coatneys received precisely the coverage for which they paid. An insurance purchaser must weigh the cost of various coverage levels against the benefit of the amount of risk protection he or she desires. The Coatneys had the option of purchasing $100,000/$300,000 in liability insurance for the Tempo, the amount for which they insured the Vandura. Because the Coatneys actually purchased the lesser coverage amount of $50,000/$100,000 for the Tempo, Nationwide correspondingly charged them a reduced premium on that vehicle. The Coatneys accepted the risk of a reduced UM recovery in the Tempo by paying a premium calculated to provide only $50,000 per person per accident.

Because the policy's language and calculation of premiums comport with the three requirements of NRS 687B.145(1), Nationwide validly restricted the Coatneys' recovery to the Tempo's $100,000 UM coverage limit. The evidence clearly indicates that Nationwide charged the Coatneys separate premiums for separate risks on each of their vehicles. Given that the insurance policy is not void for public policy, its terms must be enforced as written.[13] We therefore reverse the judgment of the district court and remand for consideration of any remaining claims.

---

[12]The Vandura premium of $46.30 purchased UM coverage of $100,000/$300,000 on that vehicle, while a separate premium of $40.60 purchased $50,000/$100,000 coverage on the Tempo.

[13]See Nelson v. CSAA, 114 Nev. 345, 347-48, 956 P.2d 803, 805 (1998).