758 P.2d 798

Roberto MOLINA, Petitioner–Appellee,

v.

Dana McQUINN and the Board of Examiners in Optometry, Respondents–Appellants.

No. 17421.

Supreme Court of New Mexico.

Aug. 9, 1988.

Hal Stratton, Atty. Gen., Kathrin Kinzer–Ellington, David A. Garcia, Asst. Attys. Gen., Santa Fe, for respondents-appellants.

Pedro Palacios, Las Cruces, for petitioner-appellee.

## OPINION

SCARBOROUGH, Chief Justice.

Respondents-appellants are Dana McQuinn and the Board of Examiners in Optometry who suspended petitioner-appellee, Robert Molina's, license to practice optometry for fourteen days. The district court reversed the Board's decision. McQuinn and the Board appeal, we reverse.

The Optometry Act, NMSA 1978, Section 61–2–1 to 61–2–18 (Repl.Pamp.1986) requires that optometrists be certified before they may use topical ocular diagnostic pharmaceutical agents or topical ocular pharmaceutical agents. *Id.* at § 61–2–10. In June 1985, Molina enrolled in a 105 hour course at Pennsylvania College of Pharmacology to be certified pursuant to section 61–2–10. Upon completion of the course

the college sent a list of the names of all persons completing the course to the Board. However, Molina's name did not appear on the list. In September 1985, Molina phoned a drug store to prescribe an ocular agent for a patient. The pharmacist checked the list naming all qualified optometrists in the use of ocular agents which was provided by the pharmacology board. Molina's name still was not on the list. After Molina assured the pharmacist that the omission was a mistake and would be corrected by the Board, the prescription was filled. The pharmacist filed a complaint against Molina with the Board of Examiners in Optometry, who then held a hearing and decided to suspend Molina's license for fourteen days because he was not certified as required by statute. Molina appealed the decision to the district court which overruled the Board's decision. We reverse.

█ We first address McQuinn's argument that the district court erred in reversing the Board's decision. In response, Molina argues that the district court properly concluded the Board exceeded its authority in determining that Molina's license should be suspended. Furthermore, in support of this argument, Molina asserts that the Board failed to provide discovery or to commence the hearing as required by statute. The statute requires the Board to provide discovery within ten days of request for discovery. NMSA 1978, § 61–1–8 (Repl. Pamp.1986). It also requires the Board to provide Molina with a hearing, after request, within sixty days of service of notice of contemplated action. NMSA 1978 § 61–1–4(D) (Repl.Pamp.1986). The Board did not comply with either of these requirements and now states that none of these issues were raised in the district court. Unfortunately, we are unable to say whether or not this is the case because the record before us is incomplete. However, we note that section 61–1–9 allows the Board to grant a prehearing continuance to assure that the licensee obtains full and complete discovery. The statute also contemplates a prehearing conference in order to simplify the issues. The evidence we have before us reveals that Molina and the Board held a prehearing telephone conference. Molina argues that he either did not approve a continuance during the conference, or if he did it was for the purpose of obtaining full discovery. Regardless of Molina's understanding of the nature of the conference, the Board granted a continuance to allow him full discovery.

Our recent decision in *Lopez v. Medical Examiners*, 107 N.M. 145, 754 P.2d 522 (1988) deals with the jurisdictional nature of the ninety day time limit within which a decision must be rendered under NMSA 1978, Section 61–1–13 (Repl.Pamp.1986). *Lopez* interpreted section 61–1–13 to require that a case must be disposed of within ninety days of final submission. Here we are concerned with the Board's failure to comply with two sections of the same act which impose time limits for the *commencement* of a case. The statutory scheme provided for the commencement of a case is quite different than that provided for its disposition. The Board had the authority to grant the prehearing continuance, pursuant to section 61–1–9, about which Molina now complains.

█ We next consider McQuinn's argument that the trial court erred in its conclusion that the Optometry Act does not provide for the manner in which an optometrist may become certified to use topical ocular pharmaceutical agents. The statute does provide a manner in which an optometrist may become certified to use topical ocular pharmaceutical agents. The statute states:

C. The board shall issue certification for the *use of topical ocular pharmaceutical agents* to optometrists who *have successfully completed an examination and submitted proof* of having satisfactorily completed a course in pharmacology as applied to optometry, with particular emphasis on the application of pharmaceutical agents for the purpose of examination of the human eye, analysis of ocular functions and treatment of visual defects or abnormal conditions of the human eye and its adnexa. The course shall constitute a minimum of one hun-

dred·five classroom-clinical hours of instruction in general and ocular pharmacology, including therapeutic pharmacology, as applied to optometry, and shall be taught by an accredited institution and approved by the board.

(Emphasis added) NMSA 1978, § 61–2–10(C) (Repl.Pamp.1986). The statute is not ambiguous. It requires the board to certify an optometrist upon submission of proof that the optometrist has satisfactorily completed an approved course in pharmacology. However, the statute does not specify the manner in which proof of completion of the course requirements should be presented to the Board. In this case, the evidence presented indicated that Pennsylvania College was the source of information relied upon by the Board to certify optometrists to use topical ocular pharmaceutical agents. A list of optometrists ultimately certified by the Board is then sent by the Board to all pharmacists to guide them in filling prescriptions. The statute does not require that the names of all certified optometrists appear on the list circulated to pharmacists by the Board. Rather, an optometrist must pass an examination and *submit proof* of completion of the course in pharmacology to the Board. "An unambiguous statute should be given effect according to its clear language." *Storey v. University of N.M. Hosp./BCMC,* 105 N.M. 205, 207, 730 P.2d 1187, 1189 (1986); *New Mexico Beverage Co. v. Blything,* 102 N.M. 533, 697 P.2d 952 (1985). In this case, the statute clearly directs that the optometrist submit proof to the Board that he has completed the requirements of the statute. To hold otherwise would render the certification process meaningless. The Board would then have to contact every pharmacology school in the country to ask if any New Mexico optometrists had completed any courses. We have previously held that, "[t]he interpretation of a statute must be consistent with the legislature's intent and must be accomplished by 'adopting a construction which will not render the statute's application absurd, unreasonable, or unjust.' " *City of Las Cruces v. Garcia,* 102 N.M. 25, 26–27, 690 P.2d 1019, 1020–21 (1984); *State*

*v. Santillanes,* 99 N.M. 89, 90, 654 P.2d 542, 543 (1982). The statute compels an optometrist to submit proof of completion of the course requirement to the Board.

■ The next question is, did Molina "submit proof" that he had successfully completed the course requirements? The trial court examined the evidence and concluded that Molina successfully completed the course at the Pennsylvania College of Optometry on June 15, 1985. However, the trial court made no finding that Molina submitted such proof to the Board. Furthermore, there is no evidence in the record to establish that Molina submitted proof of completion of the 105 hours of mandatory classroom instruction to the Board. The proper standard for our review is substantial evidence, which is evidence that a reasonable mind accepts as adequate to support a conclusion. *Sandoval v. Department of Employment Sec.,* 96 N.M. 717, 718, 634 P.2d 1269, 1270 (1981). Absent substantial evidence, the judgment must be reversed. *Whorton v. Mr. C's,* 101 N.M. 651, 653, 687 P.2d 86, 88, (1984); *Getz v. Equitable Life Assurance Soc'y,* 90 N.M. 195, 561 P.2d 468 (1977), *cert denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). There being a lack of substantial evidence, we cannot uphold the trial court's reversal of the Board's suspension.

■ McQuinn next argues that the evidence established that Molina violated the statute prohibiting the use of topical ocular pharmaceutical agents. Molina asserts that "use" should not include prescription because the optometrist himself is not "using" the ocular agent: the patient is. We construe the word "use" to extend to prescribing drugs for patients who are treated by an optometrist. Therefore, Molina "used" a topicular agent without being certified in violation of section 61–2–10.

■ Molina also argues that we may not construe section 61–2–10 because it would violate the separation of powers doctrine. We do not agree with this argument. We have previously ruled, "[n]ot only is it fundamental that interpretation of the law is a judicial matter, but where the question is

one of construction of state statutes, the state court may pass upon it as an issue of law." *Madrid v. University of Cal.*, 105 N.M. 715, 718, 737 P.2d 74, 77 (1987); *Pan Am. Petroleum Corp. v. El Paso Natural Gas Co.*, 77 N.M. 481, 424 P.2d 397 (1966). We reverse the trial court and uphold the fourteen day suspension imposed by the Board of Examiners in Optometry against Molina.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.