5 P.3d 584

2000-NMCA-057

UNITED WATERWORKS, INC., a Delaware corporation, successor-in-interest to United Water New Mexico, Inc., formerly known as Rio Rancho Utilities Corporation, Plaintiff–Appellant,

v.

NEW MEXICO PUBLIC UTILITY COMMISSION and The Attorney General of the State of New Mexico, Defendants–Appellees.

No. 20,203.

Court of Appeals of New Mexico.

June 5, 2000.

Richard B. Cole, Susan M. McCormack, Keleher & McLeod, P.A., Albuquerque, for Appellant.

Stacey J. Goodwin, Associate General Counsel, New Mexico Public Regulation Commission, Santa Fe, for Appellees.

*OPINION*

BUSTAMANTE, J.

{1} Plaintiff appeals the order of the district court granting Defendants' motion for summary judgment against Plaintiff on its complaint for declaratory relief for reimbursement of inspection and supervision fees and in favor of Defendants on its motion for penalties and interest. We agree with the district court's interpretation of NMSA 1978, § 62–8–8 (1992), and affirm the summary judgment.

*FACTS AND PROCEDURAL BACKGROUND*

{2} The relevant facts are undisputed. Plaintiff, United Waterworks, Inc., was the parent corporation of United Water New Mexico, Inc. (UWNM), and is its successor in interest. UWNM was a regulated utility subject to imposition of an inspection and supervision fee under Section 62–8–8. In 1994, the City of Rio Rancho began eminent domain proceedings to condemn UWNM's utility assets. On June 30, 1995, Rio Rancho formally took possession of UWNM's facilities and assumed operation of the utility

services. After June 30, 1995, UWNM conducted no utility business in New Mexico and was no longer subject to regulation by Defendants, the New Mexico Public Utility Commission (PUC), or to the imposition of the inspection and supervision fee.

{3} In February 1996, the PUC billed UWNM for inspection and supervision fees based on gross receipts for UWNM's water and sewer business transacted in New Mexico during the first six months of 1995. *See* § 62–8–8. Plaintiff paid the $29,957.44 principal fee on August 15, 1996. Plaintiff did not pay any interest or penalties on the principal fee, which it tendered under protest. Plaintiff then filed this declaratory judgment action, and Defendants answered and counterclaimed for the payment of interest and penalties on the late paid fees.

{4} Plaintiff and Defendants each filed a motion for summary judgment. In conjunction with their motion for summary judgment, Defendants filed various affidavits and the PUC memoranda concerning the assessment of inspection and supervision fees. The parties also filed a stipulation of facts. The district court granted summary judgment in favor of Defendants and ordered Plaintiff to pay interest and penalties on the principal amount of the fee collected.

*DISCUSSION*

{5} Section 62–8–8 provides in relevant part:

> Each utility doing business in this state and subject to the control and jurisdiction of the commission with respect to its rates or service regulations shall pay annually to the state a fee for the inspection and supervision of such business in an amount equal to one-half of one percent of its gross receipts from business transacted in New Mexico for the preceding calendar year.... [T]hat sum shall be payable on or before the last day of February in each year.

Plaintiff contends the plain language of this statute prohibits the PUC from assessing a fee against UWNM in 1996 because it lost regulatory jurisdiction over UWNM as of June 30, 1995, when UWNM ceased doing business in New Mexico and no longer possessed any of its utility assets. It argues

that the utility must be doing business in New Mexico and be subject to the control and jurisdiction of the PUC at the time the fees are assessed, rather than at some point in the past.

{6} Defendants argue that the statute is ambiguous about whether the fees collected are intended to cover the inspection and supervision expenses of the preceding year or of the year when they are assessed and become payable. They also argue that the district court's interpretation of the statute is reasonable and in keeping with the statute's history and background. We agree with Defendants and also believe that their position is most consistent with a common-sense reading of the statute.

{7} The district court issued a memorandum decision noting that the amount of the fee collected is measured by the gross receipts of the utility business in the previous year. The district court relied on a 1962 Attorney General's opinion stating that the inspection and supervision fees are collected for the PUC's services and that these services must be rendered before the fee can become due and payable. The district court concluded that "the fee is collected in the following year because that is when the receipts of the business and the extent of inspection and supervision can be known."

{8} Because there is no genuine issue involving any material fact, and because the issue on appeal requires us to interpret Section 62–8–8, we consider de novo whether the district court correctly interpreted the statute and correctly applied its interpretation to the facts of this case. *See Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582; *Romero Excavation & Trucking, Inc. v. Bradley Constr.,* 1996–NMSC–010, ¶¶ 4–5, 121 N.M. 471, 913 P.2d 659.

{9} As Defendants state in their answer brief, the statute is clear about how and when the fee is to be assessed. The statute does not, however, indicate whether the fee collected in February and based on the previous year's gross receipts is for activities by the PUC during the year when the gross receipts were generated or whether the pay-

ment is, in effect, a prepayment for the activities anticipated for the year in which the fee is assessed. Because the language of the statute does not address this question, we are not persuaded by Plaintiff's argument that the plain meaning of the statute answers the issue on appeal.

■ {10} To date, there have been no cases construing Section 62–8–8, but the attorney general has issued several opinions, beginning in 1943, answering questions concerning this statute. None of these directly answers the question posed by this appeal: whether the PUC has authority to assess and collect a fee for a preceding year when, at the time the fees are assessed, the utility no longer does business in New Mexico. Based on the language and purpose of the statute, and guided by the opinions of the attorney general, we agree with the district court that the PUC had authority under Section 62–8–8 to assess and collect fees from Plaintiff in 1996 based on Plaintiff's 1995 gross receipts.

{11} In 1962, the attorney general issued an opinion concerning when the Public Service Commission should begin collecting inspection and supervision fees from rural electric cooperatives. *See* N.M. Att'y Gen.Op. 62–16 (1962). The opinion states that "the inspection and supervision fees are in fact fees charged for the services of the Public Service Commission in supervising and inspecting these rural electric cooperatives." *Id.* The opinion then goes on to say, "It then naturally follows that before a fee would be due and payable, the Public Service Commission must have inspected and supervised these cooperatives." *Id.* Because the Commission did not have jurisdiction over the rural electric cooperatives until July 1, 1961, there could not have been any fees based on gross receipts for 1960. Instead, according to the attorney general's opinion, the fees should have begun to be collected in 1962, based on gross receipts for business transacted in New Mexico from July 1, 1961, to December 31, 1961. *See id.*

{12} Another opinion, from 1952, interpreted a statute providing for the payment of an inspection and supervision fee to the State Corporation Commission. *See* N.M. Att'y Gen.Op. 52–5533 (1952). The opinion notes

that the statute at issue was almost identical to the provision for the payment of fees to the Public Service Commission. *See id.* Using past interpretations of the fee provision for the Public Service Commission as a guide, the attorney general concluded that the State Corporation Commission fees collected in 1951 applied to the transaction of business from the previous year. *See id.*

{13} In 1943, the attorney general was asked whether a utility that went out of business during a calendar year is subject to fees for that year. *See* N.M. Att'y Gen.Op. 43–4266 (1943). The opinion states that "when a utility does business in this state for any part of a year, subject to the supervision of the Public Service Commission, ... they immediately subject themselves to a full annual fee, regardless of whether or not they operate the entire year." *Id.* The opinion continues:

> Your letter indicates the further question as to whether such private utility companies would be subject to any fees the following year after having sold their properties to a municipality. Even though it is true that such companies would have had gross receipts for a part of the preceding year, they cannot be charged fees for a year in which they do no business in the state subject to the control and jurisdiction of the commission.

*Id.* Plaintiff relies on this language to support its position that the PUC improperly assessed its fees in 1996, arguing that its predecessor in interest had not done any business in New Mexico in 1996 and therefore that the PUC did not have jurisdiction over it for that year.

{14} The language Plaintiff relies on, when read in the context of the entire opinion, does not aid Plaintiff. The opinion states that a utility cannot be charged fees for a year in which it does no business in the State. It also states that a utility doing business for any part of the year immediately subjects itself to a fee, regardless of whether they operate the entire year. *See id.* In this case, the fees assessed in 1996 against Plaintiff's predecessor in interest, based on its gross receipts from the first half of 1995, were not fees charged for 1996, a year in

which it did no business in New Mexico. The fees were assessed in 1996 but were charges for services rendered during the first half of 1995, a year when Plaintiff's predecessor in interest was doing business in New Mexico and was subject to the jurisdiction of the PUC.

{15} The 1943 opinion must also be read in the context of its time. The opinion was rendered two years after the enactment of the Public Utility Act of 1941. In 1941, inspection and supervision fees were immediately imposed based on revenues from 1940, even though there had been no services rendered in 1940. *See* 1941 N.M.Laws, ch. 84, §§ 44–45. The fees that were based on these revenues were placed in a "Public Utility Fund" to provide immediate and direct support for the operations of the newly formed Public Service Commission. *See id.* § 45. It is not clear from the record in this case how long this practice continued, although the Public Utility Act was amended in 1957 to eliminate direct funding of the Public Service Commission's operations through the inspection and supervision fees. *See* 1957 N.M.Laws, ch. 25, §§ 1, 3. We also note that Defendants filed the affidavit of Dennis Gee, the PUC's utility accounting manager, who stated that since his employment with the PUC began in 1978, new utilities have first been assessed fees in the year following the year of their certification, and that the fee assessment has been for the inspection and supervision of the utility for the preceding year.

{16} The Public Utility Act was again amended in 1961 to bring rural electric cooperatives under limited PUC regulation. *See* 1961 N.M.Laws, ch. 89, § 5. As noted, the 1962 attorney general opinion answered the question of when fees should begin to be assessed against these cooperatives, which became subject to the PUC's regulations in July 1, 1961. *See* N.M. Att'y Gen.Op. 62–16. The opinion states that fees should be assessed beginning in 1962 based on revenues from the last half of 1961 when the PUC acquired jurisdiction over the cooperatives. *See id.* Despite the somewhat confusing language of the 1943 attorney general's opinion, it is clear that in subsequent years fees were charged based on services rendered the previous year. Because the fees are charged for the prior year's services, the fact that a utility has been decertified or no longer conducts business in New Mexico does not permit it to escape liability for fees based on services previously rendered during the time when the utility was operating and subject to the jurisdiction of the PUC.

{17} This interpretation is consistent with the policy and procedures of the PUC. An affidavit filed by Dale Lucero, who has been responsible for assessing, collecting, and recording inspection and supervision fees for the PUC since 1995, indicates that the majority of utilities that have been decertified since 1990 have been assessed and have paid inspection and supervision fees in the year following their decertification, based on partial gross receipts from the previous year. Lucero acknowledged that, prior to his tenure at the PUC, the assessment of fees had not been applied absolutely uniformly and he stated his belief that efforts should be made to assess fees against the few utilities that had not been assessed fees following their decertification.

{18} We determine that the statute grants the PUC authority to assess and collect inspection and supervision fees for the preceding year, despite the fact that, during the year the fees are assessed and become payable, the utility is no longer doing business in New Mexico.

{19} We also determine that the district court correctly ruled in Defendants' favor on the penalty-and-interest fees charged to Plaintiff for the late payment of the fees. *See* NMSA 1978, § 62–8–9 (1992) (providing for the payment of interest and penalties on late payments of fees). We are not persuaded that the circumstances of this case warrant dismissal of Defendants' counterclaim for these fees.

{20} The order of the district court is affirmed.

{21} **IT IS SO ORDERED.**

PICKARD, C.J., and ALARID, J., concur.