2003-NMCA-083

71 P.3d 514

Linda Ann SLACK, Jacqueline Denise Wilson, and James Douglas Robinson, co-personal representatives of the Estate Of Jimmie L. Robinson, deceased, and Lucille Grier, Plaintiffs–Appellants,

v.

James ROBINSON, Hartford Insurance Company Of The Midwest, National Casualty Company, And Colonial Penn Franklin Insurance Company, Defendants–Appellees.

No. 23,189.

Court of Appeals of New Mexico.

May 1, 2003.

Certiorari granted, No. 28,077, June 11, 2003.

James T. Roach, Janet Santillanes, Albuquerque, NM, for Appellants.

Bruce S. McDonald, Law Offices of Bruce S. McDonald, Albuquerque, NM, for Appellee Colonial Penn Franklin Insurance Company.

Lisa E. Lear, Douglas G. Houser, Bullivant Houser Bailey PC, Portland, OR, Larry D. Beall, Jose R. Blanton, Beall & Biehler, Albuquerque, NM, for Appellee Hartford Insurance Company of the Midwest.

Gary Kilpatric, Jennifer L. Weed, Montgomery & Andrews, P.A., Santa Fe, NM, for Amicus Curiae American Insurance Association.

## OPINION

SUTIN, Judge.

{1} Plaintiffs appeal summary judgments favoring two insurers and holding that liability coverages on each of two specifically listed insured vehicles did not both apply to loss that occurred when the insured was operating a non-owned vehicle. We affirm.

## BACKGROUND

{2} James Robinson was driving a rental vehicle at the time of the accident. Jimmie Robinson and Lucille Grier were passengers in that vehicle. Jimmie Robinson was killed. Lucille Grier was injured.

{3} Plaintiffs are Linda Ann Slack, Jacqueline Denise Wilson, and James Douglas Robinson, as co-personal representatives of the Estate of Jimmie L. Robinson, deceased, and Lucille Grier (collectively, Plaintiffs). Plaintiffs sued James Robinson (the Insured), who was a named insured under vehicle liability policies issued by Hartford Insurance Company of the Midwest (Hartford) and Colonial Penn Franklin Insurance Company (Colonial). Plaintiffs also sued Hartford and Colonial, whose policies overlapped in coverage because the accident occurred during a transition period as James Robinson was obtaining new insurance coverage. At times, we refer to Hartford and Colonial together in this opinion as "the Insurers." Although not involved in this appeal, Plaintiffs also sued the insurer of the non-owned,

rental vehicle occupied by Plaintiffs, National Casualty Company.

{4} The Hartford and Colonial policies each specifically listed the same two vehicles owned by the Insured. Separate premiums were required for two separate liability coverages in each policy, each with liability limits of $100,000 per person and $300,000 per accident. Each policy also provided liability coverage for the Insured while using a non-owned vehicle.

{5} In their action, Plaintiffs contended that each policy provided $100,000/$300,000 liability coverage on each of the two listed vehicles. Thus, according to Plaintiffs, when the Insured was driving the non-owned vehicle, the liability coverage should total $400,000/$1,200,000 when all applicable coverages of each policy were combined. Plaintiffs also asserted violations of the Mandatory Financial Responsibility Act, NMSA 1978, §§ 66-5-201 to -239 (1978, as amended through 2001) (MFRA), and the New Mexico Insurance Code, NMSA 1978, § 59A-16-24(A) (1984).

{6} The district court granted summary judgments in favor of Hartford and Colonial. We granted Plaintiffs' interlocutory appeal. No material facts are in dispute.

## DISCUSSION

### I. The Policies' Liability Coverages

#### A. Standard of Review

{7} Where an appellant does not assert the existence of a genuine issue of material fact precluding summary judgment, but rather agrees that the facts are undisputed, "our task is to determine whether the district court correctly applied the law to the facts." *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 139, 921 P.2d 944, 946. "To the extent our review involves ... the application of law to undisputed facts, the review is de novo." *Grogan v. N.M. Taxation & Revenue Dep't*, 2003-NMCA-033, ¶ 10, 133 N.M. 354, 62 P.3d 1236; *Barncastle v. Am. Nat'l Prop. & Cas. Cos.*, 2000-NMCA-095, ¶ 5, 129 N.M. 672, 11 P.3d 1234.

The obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy. An

insurance contract should be construed as a complete and harmonious instrument designed to accomplish a reasonable end. Unambiguous insurance contracts must be construed in their usual and ordinary sense. A clause is ambiguous if it is reasonably and fairly susceptible of different constructions. *Miller v. Triad Adoption & Counseling Servs., Inc.,* 2003–NMCA–055, ¶ 8, 133 N.M. 544, 65 P.3d 1099 (internal quotation marks and citations omitted). The insurance contract will be construed as a whole. *Rummel v. St. Paul Surplus Lines Ins. Co.,* 1997–NMSC–042, ¶ 10, 123 N.M. 767, 945 P.2d 985.

### Rules of Construction

▉▉▉ {8} Whether aggregation of coverage limits is proper is a question of contract interpretation. *Shope v. State Farm Ins. Co.,* 1996–NMSC–052, ¶ 10, 122 N.M. 398, 925 P.2d 515. "[W]hether an ambiguity exists is also a matter of law to be decided by the court." *Richardson v. Farmers Ins. Co. of Ariz.,* 112 N.M. 73, 74, 811 P.2d 571, 572 (1991). "When this [C]ourt reviews a contract for ambiguity, it examines the entire document in an attempt to ascertain the intent of the parties." *Sanchez v. Herrera,* 109 N.M. 155, 159, 783 P.2d 465, 469 (1989). Whether ambiguity is resolved against the insurer is tested by an insured's reasonable expectations. *See Rummel,* 1997–NMSC–042, ¶ 22, 123 N.M. 767, 945 P.2d 985; *Ivy Nelson Grain Co. v. Commercial Union Ins. Co.,* 80 N.M. 224, 225, 453 P.2d 587, 588 (1969). When a clause is ambiguous, it will usually be construed against the insurance company as the drafter of the policy. *Rummel,* 1997–NMSC–042, ¶ 20, 123 N.M. 767, 945 P.2d 985. "Absent ambiguity, provisions of [an insurance] contract need only be applied, rather than construed or interpreted." *Richardson,* 112 N.M. at 74, 811 P.2d at 572. This Court must enforce clear and unambiguous contract terms. *Id.; Sanchez,* 109 N.M. at 159, 783 P.2d at 469. "[W]hen the language in the policy is unambiguous, we will not strain the words to encompass meanings they do not clearly express." *Miller,* 2003–NMCA–055, ¶ 8, 133 N.M. 544, 65 P.3d 1099 (internal quotation marks and citation omitted). "[A]n ambiguity does not exist merely because the parties disagree as to the meaning of a particular word," *id.* ¶ 13, or on the construction to be given to the contract. *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). "The fact that a particular policy contains a broad coverage provision followed by a specific coverage exclusion does not automatically render the policy ambiguous or invalidate the exclusion." *N.M. Physicians Mut. Liab. Co. v. LaMure,* 116 N.M. 92, 95, 860 P.2d 734, 737 (1993). Lack of symmetry in language is not necessarily a sign of ambiguity. *See Martinez v. Allstate Ins. Co.,* 1997–NMCA–100, ¶¶ 7–9, 124 N.M. 36, 946 P.2d 240 (holding that lack of symmetry between "per person" language in the limits of liability clause pertaining to liability coverage and uninsured motorist coverage did not render the policy ambiguous). Where provisions in a policy are internally inconsistent or in irreconcilable conflict, the court is "not so much construing an ambiguity in the policy in favor of the insured as [it is] refusing to give effect to the irreconcilable exclusionary language in the policy." *Allstate Ins. Co. v. Stone,* 116 N.M. 464, 467, 863 P.2d 1085, 1088 (1993).

### B. The Language in the Policies

#### 1. The Colonial Policy

{9} The declarations page of the Colonial policy states:

> **DESCRIPTION OF COVERAGES:** The insurance afforded is only as indicated by the following coverages. T[ ] [1] of the Company's liability for each coverage is as stated below, subject to all the terms of the policy.

The declarations page then identifies the following liability coverages and coverage limits for the Insured's two vehicles:

---

1. As this declarations page appears in the record, the content bordering the right margin of the page was not copied. What is shown is "T|" at the margin. We are unable to discern what this

"T|" is, along with any following word before "of." A portion of the contents bordering the right margin of this declarations page was missed in the copying process.

| COVERAGE | LIMITS | | CAR 1 | CAR 2 |
|---|---|---|---|---|
| Bodily Injury | Each Person | | $100,000 | 100,000 |
| Liability | Each Occurrence | | $300,000 | 300,000 |
| | PREMIUM | | $ 297.20 | $283.60 |

The description given within the Colonial policy of bodily injury liability coverage, in part, reads:

> We will pay all sums that anyone insured under this coverage is legally required to pay as damages for bodily injury or property damage. The injury or damage must result from the use of an auto or trailer listed on your Declarations Page or for certain persons, from the use of a non-owned auto.... Use of an auto means owning, operating, loading, unloading or maintaining it. A non-owned auto is one that isn't owned by or registered to You or anyone living in your household.

(Emphasis omitted.[2]) The policy also states: "You are protected when using a non-owned auto." Further, with regard to limits of liability coverage, the policy states:

> The limits of Liability Coverage are shown on your Declarations Page. These limits apply separately to each auto listed there. The insurance under the Liability Coverages also applies separately to each insured person against whom a claim is made or a suit is brought. The applicability of this insurance to more than one insured person does not, however, increase our liability.
>
> There are two limits of coverage for Bodily Injury Liability. The amount shown on your Declarations Page for "Each Person" is the most We'll pay for damages because of bodily injury to one person caused by any one occurrence. The amount shown on your Declarations Page for "Each Occurrence" is the most We'll pay for all damages as a result of any one occurrence, no matter how many people are injured. **For example, say the amounts shown are $10,000 for Each Person and $20,000 for Each Occurrence. If only one person is injured in an accident the limit of coverage is $10,000. Even if five people are injured, however, $20,000 is the most We'll pay for all bodily injury in the accident.**

These clauses combine two policy clauses in the nature of what are customarily referred to as the "separability clause" and the "limits of liability clause." The policy also contains an "other insurance clause" that refers to use of a non-owned vehicle:

> **If a loss involves the use of a non-owned auto or a temporary substitute auto.** A loss may involve the use of a non-owned auto or a temporary substitute auto.... For losses that involve such autos this policy will be excess insurance. This means We'll pay only the amount of insured loss that's left after other insurance has been used up. Our payment will not, however, be more than the amount of liability coverage under this policy.

## 2. The Hartford Policy

{10} The declarations page of the Hartford policy states:

**COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE.**

| COVERAGES AND LIMITS OF LIABILITY | | | PREMIUMS BY AUTO | |
|---|---|---|---|---|
| | | | 1 | 2 |
| LIABILITY BODILY INJURY | EACH PERSON | $100,000 | | |
| | EACH ACCIDENT | $300,000 | $115.00 | 115.00 |

With regard to liability coverage, the policy states: "We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." The policy also states that " 'Insured' as used in this [Liability Coverage] Part means ... You or any family member for the ownership, maintenance or use of any auto or trailer."

---

**2.** Words italicized or in boldface in the Colonial policy and in the Hartford policy to indicate they are defined words in that policy are not italicized or bold in this opinion.

{11} The Hartford policy's limit of liability clause reads in pertinent part:

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

. . . .

This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

The Hartford policy does not contain a separability clause.

**C. The Issue of Aggregating the Policies' Liability Coverages**

**1. First Impression Issue; Other Jurisdictions**

{12} Whether an insurance policy's separate liability coverages on two owned, listed vehicles both apply when an insured operates a non-owned vehicle is an issue of first impression in New Mexico. The policies clearly and expressly set out the liability coverages and coverage limits for each of the two listed vehicles, together with the premiums for those two separate coverages. Plaintiffs do not contend that the policies allow aggregation of two coverages applicable to the two listed vehicles when one of those listed vehicles is involved in an accident. The majority of jurisdictions addressing the issue do not permit aggregation of separate liability coverages when one of the listed vehicles is involved in an accident.[3] Neither policy contains language from which such an aggregation can be reasonably implied or inferred.

{13} Further, the majority of jurisdictions that have addressed whether liability coverages will be aggregated when the insured is in an accident involving a non-owned vehicle also do not permit aggregation of the coverages. *See Emick v. Dairyland Ins. Co.*, 519 F.2d 1317, 1327 (4th Cir.1975); *Hendrickson v. Cumpton*, 654 S.W.2d 332, 333–36 (Mo.Ct.

**3.** *Single policy covering multiple vehicles: Allstate Ins. Co. v. Mole*, 414 F.2d 204 (5th Cir. 1969); *Greer v. Associated Indem. Corp.*, 371 F.2d 29 (5th Cir.1967); *Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568 (4th Cir.1964); *Basso v. Allstate Ins. Co.*, 19 Ariz.App. 58, 504 P.2d 1281 (Ariz.Ct.App.1973); *Gibbons v. Shockley*, 341 So.2d 260 (Fla.Dist.Ct.App.1977); *Maine v. Hyde*, 350 So.2d 1161 (Fla.Dist.Ct.App.1977); *Cook v. Suburban Cas. Co.*, 54 Ill.App.2d 190, 203 N.E.2d 748 (1964); *Oarr v. Gov't Employees Ins. Co.*, 39 Md.App. 122, 383 A.2d 1112 (1978); *Maher v. Chase*, 52 Mass.App.Ct. 22, 749 N.E.2d 717 (2001); *Cmty. Serv. Ins. Co. v. Price*, 41 Mich. App. 604, 200 N.W.2d 450 (1972); *Hilden v. Iowa Nat'l Mut. Ins. Co.*, 365 N.W.2d 765 (Minn. 1985); *Houser v. Gilbert*, 389 N.W.2d 626 (N.D. 1986); *Thompson v. Cont'l Ins. Cos.*, 291 S.C. 47, 351 S.E.2d 904 (1986); *Pac. Indem. Co. v. Thompson*, 56 Wash.2d 715, 355 P.2d 12 (1960); *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161 (1995); *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985); *Rosar v. Gen. Ins. Co. of Am.*, 41 Wis.2d 95, 163 N.W.2d 129 (1968). *Two or more policies covering separate vehicles: Palmisano v. Horace Mann Mut. Ins. Co.*, 446 F.Supp. 232 (W.D.Mo.1978); *Gordon v. Gordon*, 41 P.3d 391, 393 (Okla.2002) (noting that opinions in two federal circuits and "from at least nineteen state appellate courts . . . all have refused to allow liability coverages to be stacked"); *Giles v. Whitaker*, 297 S.C. 267, 376 S.E.2d 278 (1989); *Agnew v. Am. Family Mut. Ins. Co.*, 150 Wis.2d 341, 441 N.W.2d 222 (1989). 12 *Couch on Insurance* § 169:109 (3d ed.1998) cites many of these cases to support the proposition that "[a] great many courts . . . have ultimately concluded that stacking of coverages was not proper in the context of automobile liability insurance[,] especially when the coverages sought to be stacked appear in the same policy which covers more than one vehicle." (Footnotes omitted.) *But see Hall v. Gen. Cas. Co.*, 328 Ill.App.3d 655, 262 Ill.Dec. 760, 766 N.E.2d 680, 683 (2002) (holding that the declarations page language, " 'Insurance is provided where a premium is shown,' together with the layout of the declarations page" created an ambiguity).

App.1983); *Rando v. Cal. State Auto. Ass'n,* 100 Nev. 310, 684 P.2d 501, 503–06 (1984); *Polland v. Allstate Ins. Co.,* 25 A.D.2d 16, 266 N.Y.S.2d 286, 287 (N.Y.App.Div.1966); *Allstate Ins. Co. v. Zellars,* 462 S.W.2d 550, 554–56 (Tex.1970). *But see Kraft v. Hartford Ins. Cos.,* 279 S.C. 257, 305 S.E.2d 243, 244–45 (1983) (permitting aggregation of liability coverages based on wording of separability clause), *distinguished by Thompson v. Cont'l Ins. Cos.,* 291 S.C. 47, 351 S.E.2d 904, 906–07 (1986) (distinguishing *Kraft* based on difference in language of separability clauses).

{14} What creates an arguable position for Plaintiffs in this case is the absence in either policy of an express link of the liability coverage for use of a non-owned vehicle to a premium or coverage limit that specifically pertains to such use. More specifically, the Colonial policy states that Colonial will pay amounts its insured is legally liable to pay as damages for bodily injury resulting from the use of a non-owned vehicle after other insurance is used up. Then, without specific reference to a premium or any coverage limits relating to the use of a non-owned vehicle, the policy states in its separability/limits of liability clauses that the limits of coverage shown on the declarations page for "each person" is the most it will pay for damages because of bodily injury to one person caused by any one occurrence. Yet the coverage limits on the declarations page are shown only in relation to the two owned, listed vehicles.

{15} Similarly, the Hartford policy states that Hartford will pay damages for bodily injury for which its insured becomes legally responsible while using "any auto." Then, without specific reference to non-owned vehicles, the policy states that the "limit of liability shown in the Declarations for each person for Bodily Injury Liability is [the] maximum limit of liability for all damages ... sustained by any one person in any one auto accident," being "the most [Hartford] will pay regardless of the number of ... [v]ehicles or premiums shown in the Declarations; or [ ][v]ehicles involved in the auto accident." But the declarations page contains no specific reference to non-owned vehicles; rather, it shows coverage limit amounts only in relation to the two owned, listed vehicles.

## 2. Plaintiffs' Basic Contention

{16} Plaintiffs assert that the liability coverage in each policy for the use of a non-owned vehicle can only be read as being tied to the liability coverages attendant each of the listed vehicles, and, inseparable from each of the two separate coverages, must be read as carrying both of the separate coverages. Therefore, Plaintiffs argue, each premium paid must be considered payment for coverage when a non-owned vehicle is involved. Furthermore, referring to our uninsured motorist and medical coverage stacking jurisprudence, Plaintiffs contend that a hypothetical insured would reasonably expect, from ambiguities, omissions, and inconsistencies in and among the clauses, that both coverages would apply when using a non-owned vehicle. Plaintiffs argue that these policy deficiencies require construction of the policies strictly against the Insurers. Plaintiffs specifically attack the Colonial policy as not containing an "exclusionary" anti-aggregation clause. Plaintiffs also contend that the Colonial policy contains internal inconsistencies and ambiguities, arguing that any limitation on aggregation of limits is inconsistent with the declarations. Plaintiffs attack the Hartford policy asserting it contains irreconcilable provisions, namely, one stating that coverage is only provided where a premium is shown, and another stating that only one of the coverages is provided regardless of the number of premiums shown.

{17} The Insurers also appear to tie coverage for the use of a non-owned vehicle to coverage for a specific vehicle. However, they tie the coverage for use of a non-owned vehicle solely to one listed vehicle's coverage, not both listed vehicles' coverages. Hartford specifically argues that the non-owned vehicle "merely stands in the place of one of the [I]nsured's owned and listed vehicles."

## 3. The Role of Legislative Policy

{18} The MFRA requires of vehicle owners a minimum financial responsibility. *See* §§ 66-5-201.1, -205, -208, -218. The purpose is to assure that residents of New

Mexico who own and operate vehicles either "have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle or to obtain a motor vehicle insurance policy." § 66–5–201.1. It is a crime for an owner to permit the operation of an uninsured vehicle. § 66–5–205(A), (E). It is a crime to drive an uninsured vehicle. § 66–5–205(B), (E). An owner, as well as an operator, of a vehicle must provide "evidence of the ability to respond in damages for liability, . . . arising out of the ownership, maintenance or use of a vehicle" in the minimum amount of $25,000 "because of bodily injury to or death of one person in any one accident" and, subject to that limit, a minimum of $50,000 for "bodily injury to or death of two or more persons in any one accident." § 66–5–208(A), (B). Evidence of a motor vehicle insurance policy fulfills that requirement. § 66–5–218(A). Registration of a vehicle can be suspended by the Motor Vehicle Division if insurance coverage is not provided. § 66–5–206(B). For an owner who satisfies these statutory obligations by purchasing insurance, we believe it reasonable to conclude that the Legislature intended the mandatory minimum coverage to also be provided for insureds who drive non-owned vehicles. *See* §§ 66–5–201.1, –205(A), –208.

{19} Clauses containing non-owned vehicle coverage typically include language that excludes from such coverage vehicles that should be separately listed, such as owned vehicles and vehicles frequently used by the insured. Our Supreme Court has stated that such language "extends coverage beyond the automobile scheduled in the policy with the purpose to protect an insurer against a situation where an insured purchases a policy covering one car and could then be covered as to all automobiles he frequently uses." *State Farm Mut. Auto. Ins. Co. v. Moreno*, 109 N.M. 382, 383, 785 P.2d 722, 723 (1989) (internal quotation marks and citation omitted); *see Keplinger v. Mid–Century Ins. Co.*, 115 Ariz. 387, 565 P.2d 893, 895 (Ariz.Ct.App. 1977) (stating that the purpose of the non-owned vehicle clause "is to cover the occasional or incidental use of other cars without the payment of an additional premium").

{20} Thus, the public policy of this State expressed through the MFRA is that persons may not operate uninsured, non-owned vehicles without first either giving evidence of ability to respond to damages or purchasing a liability policy with minimum coverage requirements. This public policy, of course, applies to owners of vehicles who purchase insurance policies for their owned vehicles. Their policies must contain the minimum MFRA-required bodily injury liability coverage for non-owned vehicles operated by the insured. Our statutes do not require that an insured maintain liability coverage in excess of the mandatory minimum amounts. Nor do our statutes require or suggest that the insured maintain, or that a policy contain, any increase in minimum coverage as a result of multiple vehicles owned by the insured. The limited mandates of our law permit no ascertainable public policy favoring a construction of insurance policies to increase limits of liability protection by aggregation of the coverage limits.

### 4. No Basis Exists to Aggregate Coverage Limits

{21} No New Mexico statute, including the MFRA, requires aggregation of liability coverage limits when the insured is operating a non-owned vehicle. Nor has any judicially-imposed stacking taken root in New Mexico related to liability coverage. Nothing in the policies or in the evidence indicates that the Insured paid a premium for risk beyond the coverage specifically assigned to each listed vehicle. *Id.* ("The purpose of a 'drive other cars' provision is to cover the occasional or incidental use of other cars without the payment of an additional premium, but concomitantly, to exclude habitual use of others cars which would increase the insurer's risk without a corresponding increase in premium."); *Hochgurtel v. San Felippo*, 78 Wis.2d 70, 253 N.W.2d 526, 530 (1977) (stating the purpose of non-owned automobile provision in a policy was not to cover the insured's operation of a vehicle frequently used, "as that increases the risk to an insurance company without a corresponding increase in premium"). Plaintiffs point to no language in the policies that authorizes stacking. *See Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161, 170 (1995)

(holding that "where uninsured or underinsured coverage is not involved, stacking of liability coverage is permitted only when the insured can point to some specific policy language that authorizes stacking"). The premium to be paid for liability insurance coverage is a matter of contract between insurer and insured. *See Presley Homes, Inc. v. Am. States Ins. Co.*, 90 Cal.App.4th 571, 108 Cal.Rptr.2d 686, 691 (2001) (recognizing "[t]he payment of an additional premium would appear to be a matter of contract between [insurer] and the [insured]," and indicating also that insurer's provision of additional insured endorsements without increasing the premium would not affect other coverages); *Ind. Ins. Co. v. Allis*, 628 N.E.2d 1251, 1253 (Ind.Ct.App.1994) ("Any additional or greater coverage is a matter of contract—which contemplates coverage in exchange for a premium."). Insurance companies can and do charge separate premiums for separate liability risks attributed to each owned and listed vehicle. Whether the liability risk is the minimum amount of coverage required by statute or a greater amount, the amount is agreed on between insurer and insured. *See Payne*, 466 S.E.2d at 163, 169–70 (quoting, with approval, language from precedent stating that "there is no judicial policy that prevents an insurer from ... limiting its liability [through a clause that limits coverage for any one occurrence, regardless of the number of vehicles covered] and yet collecting a premium for each covered vehicle because each premium is for the increased risk of an 'occurrence' " (internal quotation marks and citation omitted)). Nothing in the policies suggests that the two premiums for the two separate liability coverages on the two listed vehicles purchased an aggregation of the two coverages for an accident involving a non-owned vehicle. Conversely, the limits of liability clauses in the policies unambiguously say that the amount shown for each person for bodily injury liability is the maximum limit the insurer will pay for injury to one person in one occurrence. These clauses can only be read to reinforce the view that the policies insure the use of non-owned vehicles separately and to the extent of one coverage limit.

{22} Furthermore, reading the policies as a whole, we do not see any policy language as being susceptible to two fair and reasonable constructions on the issue before us. That is, we see no reasonable construction that would require doubling the coverage amount payable when a non-owned vehicle is involved, or preclude application of the policies' limiting provisions. To the contrary, the logic and language of each policy permits only one reasonable construction, namely, that the stated limits of $100,000/$300,000 are the maximum coverages applicable to any one occurrence involving a non-owned vehicle, as it would be for either of the covered vehicles. The language purporting to exclude aggregation of liability limits is clear and unambiguous. It is not irreconcilable with the grant of liability coverage. The only reasonable reading of the policies is that liability coverage for non-owned vehicle use exists, that liability is limited to $100,000 per person and $300,000 per accident, and aggregation of the liability limits is excluded.

{23} As indicated in this opinion, the overwhelming majority of cases addressing the aggregation of liability coverages deny it. Many of those cases also address the attempt to transfer to liability coverage the rationale that forms the predicate for uninsured motorist and medical pay stacking jurisprudence. These cases correctly hold that no parity exists between liability coverage and uninsured motorist and medical pay coverages such that uninsured motorist and medical pay jurisprudence is to be applied to liability coverage. *See, e.g., Emick*, 519 F.2d at 1325; *Allstate Ins. Co. v. Mole*, 414 F.2d 204, 205–07 (5th Cir.1969); *Maher v. Chase*, 52 Mass. App.Ct. 22, 749 N.E.2d 717, 719–20 (2001); *Rando*, 684 P.2d at 503–04; *Zellars*, 462 S.W.2d at 555–56. The rationale behind this conclusion has mainly been that liability coverage is specific to covered vehicles. *See Maher*, 749 N.E.2d at 719; *Couch on Insurance, supra*, at n. 65.

{24} Our Supreme Court has emphasized that the type of coverage is significant in determining whether stacking is appropriate, and that uninsured motorist and medical pay coverages follow and protect the insured whereas liability coverage follows the vehicle.

*See, e.g., Rodriguez v. Windsor Ins. Co.,* 118 N.M. 127, 129, 133, 879 P.2d 759, 761, 765 (1994); *Vigil v. Cal. Cas. Ins. Co.,* 112 N.M. 67, 70, 811 P.2d 565, 568 (1991); *Lopez v. Found. Reserve Ins. Co.,* 98 N.M. 166, 170, 646 P.2d 1230, 1234 (1982). Thus, in considering parity between liability coverage and uninsured motorist coverage, the distinction made in other jurisdictions between coverage focused on the person and coverage focused on the vehicle might also be made in New Mexico law. However, although a vehicle must be involved, the use of a non-owned vehicle may be said to follow the insured in the sense that the coverage exists no matter what non-owned vehicle is used (assuming, of course, the vehicle is not properly excluded in a non-owned vehicle clause). *See Couch on Insurance, supra,* § 169:109 (stating that the "following the vehicle" characterization, while popular, is a generally out-moded concept as to modern liability insurance). Plaintiffs, indeed, argue that "in the situation of a non-owned car, the liability coverage 'follows the insured.'"

 {25} While an argument can be made that the coverage is in some sense personal because it follows the insured to a non-owned vehicle, liability coverage is nevertheless vehicle dependent. The liability coverage is not like a first-party or personal-accident policy, such as uninsured motorist or medical pay coverages. *See Vigil,* 112 N.M. at 70, 811 P.2d at 568 (likening medical pay coverage to " 'limited personal accident insurance' which, like uninsured motorist coverage (and subject to any explicit policy limitations or exclusions), applies if at the time of the accident the insured 'was occupying the [automobile] described in his policy or was on foot, or on horseback, or while sitting in his rocking chair on his front porch or while occupying a non-owned automobile'" (alteration in original) (citation omitted)). Liability coverage results solely because a vehicle is involved.

{26} Plaintiffs paid separate premiums for specific, separate coverages on two listed vehicles. If the Insured or another permitted driver or occupant were injured while in one of those vehicles, only the liability coverage limits for that vehicle are applicable. The policies also provide liability coverage for the Insured's use of a non-owned vehicle. The policies limit liability to the amount shown in the declarations for each person as the most the insurer will pay for damages because of bodily injury sustained by one person in one occurrence or accident. This limitation is obviously intended to apply to the Insured's use of a non-owned vehicle. The limits of liability clauses belie any notion of an aggregation expectation. Nor does there exist in New Mexico any judicial policy upon which Plaintiffs can rely that prevents an insurer from limiting its liability through a clause that has the effect of precluding aggregation of liability coverage when one covered vehicle is involved in one occurrence. *Cf. Sanchez,* 109 N.M. at 158, 160, 783 P.2d at 468, 470 (stating that the Court's prior decisions concerning stacking of uninsured motorist coverage were not directly analogous to the medical pay stacking issue in *Sanchez,* singling out as the differentiating feature the strong public policy in New Mexico regarding uninsured motorist coverage, and precluding stacking of medical pay coverage in the face of an unambiguous, explicit exclusionary provision that did not conflict with any statutory public policy).

{27} Plaintiffs nevertheless assert that separate premiums for the two separate coverages requires aggregation of the coverages when using a non-owned vehicle because the premiums also purchased coverage for the use of a non-owned vehicle. This assertion has no support. There is no undisputed evidence that the Insured paid two premiums or, for that matter, any premium, to purchase either non-owned vehicle liability coverage or aggregated liability coverage when operating a non-owned vehicle. *See Emick,* 519 F.2d at 1324 (stating that it could not be assumed, without proof, that a premium was charged for the non-owned vehicle coverage); *Rando,* 684 P.2d at 505 (discussing unlikelihood that anything but an "insubstantial amount of the liability premium" would be allocable to the non-owned vehicle coverage). Plaintiffs have not proven circumstances giving rise to a reasonable expectation from either policy allowing for twice the per-person limit of liability. *Cf. Samora v. State Farm Mut. Auto. Ins. Co.,*

119 N.M. 467, 471, 892 P.2d 600, 604 (1995) (holding, in case involving application of contractual and statutory offsets against a liability payment, that insured could not reasonably expect to recover more than the uninsured motorist coverage paid for). Furthermore, no rational nexus exists between non-owned vehicle coverage and the number of owned vehicles listed in the policies. *See Emick,* 519 F.2d at 1324.

{28} Finally, and perhaps most significantly, Plaintiffs have not presented a persuasive explanation as to why the two separate coverages would not be applied if a listed vehicle were in an accident, but should be applied when a non-owned vehicle is in an accident. We can see no logic or rationale to support the conclusion that a limitation to one coverage should apply when a listed vehicle is involved in an accident, but not when a non-owned vehicle is involved in an accident. *See id.* at 1327 ("[T]here is no sound reason why there should be a doubling or multiplying of the limits of liability simply because the insured was operating a non-owned car."); *Rando,* 684 P.2d at 505 ("[I]t defies reason to conclude that non-owned vehicle usage expands an insured's liability coverage beyond that enjoyed while using an owned vehicle."); *Zellars,* 462 S.W.2d at 555–56 (adopting three rationales for limited coverage: non-owned vehicle coverage is separate insurance, the policy holder is already covered while driving a non-owned vehicle regardless of the number of owned vehicles listed, and the policy holder pays no additional premiums for non-owned vehicle coverage if an additional vehicle is added to the policy). Plaintiffs offer no reasonable response to this sensible view of the policies. Nor have Plaintiffs shown the following common sense observation to be errant:

> Obviously, any one insured can operate but one automobile at a time. Bodily injury liability coverage, with its attendant limits of liability, is therefore designed to attach to whichever automobile an insured happens to be driving, whether that automobile is one of several automobiles listed under the policy or whether it is a non-owned automobile.

*Emick,* 519 F.2d at 1326.

{29} One must strain too much to conclude that the coverages applicable to the two list-ed vehicles both apply when the Insured is driving a non-owned vehicle. A reasonable insured would not expect the limitation of liability provisions to apply differently depending on whether a listed vehicle, rather than a non-owned vehicle, was involved in the accident. A reasonable insured would have no expectation of the aggregation of two coverages, doubling the coverage amount payable, if a listed vehicle were involved. Similarly, a reasonable insured would have no expectation of the aggregation of two coverages, doubling the coverage amount payable when a non-owned vehicle is involved. Any lack of clarity in the policies, as to how the non-owned vehicle coverage links to the listed vehicle coverages and the coverage limits, does not require construction of the policies in favor of Plaintiffs' position. We therefore decline Plaintiffs' request that we automatically jump from lack of policy clarity to a construction in favor of aggregating the two liability coverages.

{30} We note that Amicus Curiae, the American Insurance Association (AIA), urges us to consider that the likely consequence of aggregation of liability coverage when a non-owned vehicle is involved will cause premiums to be charged or substantially increased for coverage for the use of non-owned vehicles. As a result, AIA contends, liability coverage would be placed out of reach for many individuals. We decline to ground our decision in these concerns, particularly because the facts underlying these arguments were not developed below.

{31} In sum, Plaintiffs have not proven that two separate premiums were paid for use of a non-owned vehicle. The Insured could use only one vehicle at a time. Liability based on the Insured's conduct could result only from the Insured's use of that one vehicle. Liability coverage and the limits of that coverage pertained to the one vehicle being used by the Insured, whether it was a listed vehicle or a non-owned vehicle. A reasonable insured could have no other expectation. We hold that the two separate liability coverages for the two listed vehicles do not both apply to the use of a non-owned

vehicle under the Hartford and Colonial policies.

## II. The MFRA

{32} Plaintiffs contend that the policies' liability limitation provisions, if held to be unambiguous and applicable, nevertheless violate the MFRA. We review the application of statutes to the facts de novo. *United Waterworks, Inc. v. N.M. Pub. Util. Comm'n*, 2000–NMCA–057, ¶ 8, 129 N.M. 262, 5 P.3d 584; *see also State v. Herrera*, 2001–NMCA–007, ¶ 6, 130 N.M. 85, 18 P.3d 326 (reviewing district court's application of criminal statute to the facts of the case de novo). The construction of statutes constitutes a matter of law for district courts. *See Molina v. McQuinn*, 107 N.M. 384, 386–87, 758 P.2d 798, 800–01 (1988) ("[W]here the question is one of construction of state statutes, the state court may pass upon it as an issue of law." (internal quotation marks and citation omitted)); *Godwin v. Mem'l Med. Ctr.*, 2001–NMCA–033, ¶ 23, 130 N.M. 434, 25 P.3d 273 (recognizing that construction of a statute is a matter of law).

{33} Plaintiffs point out that under the MFRA both of the Insured's owned vehicles were required to have liability insurance, and both were insured. Therefore, Plaintiffs argue, the effect of the limits of liability clause in each policy "is to render one of the vehicles uninsured when he is driving a non-owned auto." Stated another way, Plaintiffs assert that "[t]o say that the liability on only one auto applies here means that the liability coverage on the second insured auto disappears where the loss involves a non-owned auto." As a result, according to Plaintiffs, "[i]f an exclusion has the effect of rendering one auto uninsured, the exclusion conflicts with the statute and is void." Plaintiffs reason that the exclusions attempt to violate the MFRA by saying only one of the two purchased limits applies, leaving one of the insured vehicles without the mandated liability coverage when the insured drives a non-owned vehicle.

{34} Plaintiffs cite no other authority than *Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 703 P.2d 882 (1985), for this proposition. *Estep* held certain "household" ex-clusions asserted by an insurer to exclude coverage of claims of a wife against her deceased husband-insured to be against public policy because the exclusions were in conflict with MFRA. *Id.* at 109, 111, 703 P.2d at 886, 888. *Estep* does not assist Plaintiffs. The holding in *Estep* is based on and limited to the Supreme Court's view that exclusions of coverage for household members conflicted with the MFRA's mandated protection for "loss from the liability imposed by law for damages arising out of the . . . use of [an insured] vehicle." *Id.* at 108, 703 P.2d at 885 (quoting § 66–5–230(B)(2)). The underlying rationale of the Court was "that denial of negligence actions to an entire class of persons—here, all family members—cannot be tolerated simply because some undefined portions of that class might instigate fraudulent lawsuits." *Id.* at 109, 703 P.2d at 886. The Court determined that such a limitation was inconsistent with the broad MFRA mandate and purpose to "protect[ ] innocent accident victims from financial hardship." *Id.* at 110, 703 P.2d at 887. We see no persuasive analogy linking the *Estep* holding and rationale to the limitation of liability coverage in the present case.

{35} We hold that the provisions in the policies limiting the Insurers' liability do not violate the MFRA. Limits of liability clauses do not violate public policy. *See LaMure*, 116 N.M. at 95, 860 P.2d at 737 ("The parties to an insurance contract may validly agree to extend or limit insurance liability risks. Thus, exclusions in insurance policy coverage provisions that are clear and unambiguous and that do not conflict with public policy expressed by statute will be enforced." (citation omitted)); *see also Payne*, 466 S.E.2d at 168 ("[P]ublic policy is satisfied when there is liability insurance sufficient . . . to meet minimum requirements of our financial responsibility law."); *cf. Rodriguez*, 118 N.M. at 133, 879 P.2d at 765 (stating that an insurer can limit its stacking liability contractually through "a truly unambiguous antistacking clause" relating to uninsured motorist coverage (emphasis omitted)); *Sanchez*, 109 N.M. at 160, 783 P.2d at 470 (giving effect to an unambiguous clause providing that medical payment coverage could not be stacked).

Public policy is satisfied when an owner obtains liability insurance for an occurrence involving a non-owned vehicle sufficient to meet the minimum requirements under the MFRA. Further, MFRA's requirement that liability coverage include mandatory minimum coverage for a non-owned vehicle cannot be expanded to trigger aggregation of coverage for two listed vehicles. Nor can it be reasonably understood to render either of the vehicles uninsured if the owner is in fact operating a non-owned vehicle.

### III. The New Mexico Insurance Code

■ {36} Plaintiffs contend that collection of a premium for liability coverage as defined in the policy, and then excluding that coverage by a limitation or exclusionary language violated the New Mexico Insurance Code, NMSA 1978, § 59A–16–24(A) (1984). Section 59A–16–24(A) states:

> No person shall wilfully collect any sum as premium or charge for insurance or other coverage, which insurance or coverage is not then provided or in due course to be provided (subject to acceptance of the risk by the insurer) by a policy issued by an insurer as authorized by the Insurance Code.

We review the application of statutes and case law to the facts de novo. *United Waterworks,* 2000–NMCA–057, ¶ 8, 129 N.M. 262, 5 P.3d 584. The construction of statutes consti-tutes a matter of law for district courts. *Molina,* 107 N.M. at 386–87, 758 P.2d at 800–01.

{37} Plaintiffs argue that because the policies state that liability coverage includes coverage for use of a non-owned vehicle, and "[a] premium was paid on each car for that liability coverage[,] [t]o refuse to give that coverage when a premium was paid is a violation of [Section 59A–16–24A]." Plaintiffs again argue that separate premiums were charged for the coverages and the liability coverage must be stacked. We again reject that argument.

### CONCLUSION

{38} We affirm the summary judgments entered in favor of Hartford and Colonial adjudging that only one liability coverage limit of $100,000/$300,000 applies to the use of and accident involving the non-owned vehicle.

{39} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.